## The UNITED STATES v. SHELDON.

Under the act of the 6th July, 1812, " to prohibit American vessels
from proceeding to or trading with the enemies of the United States,
and for other purposes," held that *living fat oxen*, &c. are articles
of provision and munitions of war, within the true intent and mean-
ing of the act.

Also held, that *driving* living fat oxen, &c. *on foot* is not a *transporta-
tion* thereof within the true intent and meaning of the same act.

THIS cause was argued by the *Attorney General*, Feb. 12th,
for the United States, and by Mr. *Hopkinson*, for the
defendant.

Mr. Justice WASHINGTON delivered the opinion of Feb. 26th.
the court.

The defendant, George Sheldon, was indicted in
the circuit court for the district of Vermont, for
transporting, over land, in November, 1813, a certain
number of fat oxen, cows, steers, and heifers, from a
place in the United States to the province of Lower
Canada. A special verdict was found which submit-
ted to the court the questions, whether living fat oxen,
cows, steers, and heifers, are articles of provision
and munitions of war, and whether driving living fat
oxen, cows, steers, and heifers, on foot, is a transpor-
tation thereof, within the true intent and meaning of
the act of Congress then in force. The judges be-
ing opposed in opinion upon both these questions,
the cause comes before this court upon a certificate
of such disagreement.

1817.

The United
States
v.
Sheldon.

This indictment was founded on the act of the 6th of July, 1812; the second section of which declares " that if any citizen of the United States, or person inhabiting the same, shall transport, or attempt to transport, over land or otherwise, in any waggon, cart, sleigh, boat, *or otherwise,* naval or military stores, arms or munitions of war, or any articles of provision from the United States to Canada, &c., the waggon, cart, sleigh, boat, or the thing by which the said articles are transported, or attempted to be transported, together with the articles themselves, shall be forfeited; and the person aiding, or privy to the same, shall forfeit to the United States a sum equal in value to the waggon, &c. or thing by which the said articles were transported, and shall moreover be considered as guilty of a misdemeanor and liable to fine and imprisonment."

In answer to the first question submitted to this court, we are unanimously of opinion that living fat oxen, &c. are articles of provision and munitions of war, within the true intent and meaning of the above-recited act.

The second question is attended with much more difficulty: Is the *driving* of living fat oxen, &c. a *transportation* of them within the true intent and meaning of the law?

There is no doubt but that the word *transport,* correctly interpreted as well as in its ordinary acceptation, means *to carry,* to *convey;* and in this sense it seems to a majority of the court the legislature intended to use it. The offence is made to consist in transporting in any waggon, cart, sleigh, boat, or

therwise, the prohibited articles. Had the words
" or otherwise" been omitted, it would scarcely ad-
mit of a doubt, that unless the prohibited articles had
been conveyed on some one of the enumerated vehi-
cles, no offence would have been committed within the
words or the meaning of the law. What then is the
correct interpretation of these expressions, taken in
connection with the other parts of the section? To
transport an article in a waggon, or otherwise, would
seem necessarily to mean to carry or convey it in
that or in some other vehicle, by whatever name it
might be distinguished. If these words are constru-
ed to mean, a removal of the article from one place
to another otherwise than in a vehicle, it might well
admit of a doubt, whether a removal in a vehicle,
other than one of those which are enumerated, would
be a case within the law.

But so far from this matter being left a doubt by
the law, we find, that when the punishment by way
of forfeiture is prescribed, the words " or otherwise"
are very plainly construed to mean *the thing by which
the articles are transported;* thus distinguishing be-
tween the thing which transports, and the thing
which is transported.

It may be admitted, that the mischief is the same,
whether the enemy be supplied with provisions in
the one way or the other; but this affords no good
reason for construing a penal law by equity, so as to
extend it to cases not within the correct and ordinary
meaning of the expressions of the law, particularly
when it is confirmed by the interpretation which the
legislature has given to the same expressions in the

same law. If it were impossible to satisfy the words " *or otherwise*," except in the way contended for on the part of the United States, there would be some reason for giving that interpretation to them. But it has been shown that this is not the case.

It was contended by the Attorney General, that these questions were in effect settled in the case of the United States v. Barber.[a] But this is clearly a mistake. The only question in that case which was referred to this court, was, " whether fat cattle are provisions or munitions of war ?" The decision of this court was in the affirmative. But whether the fat cattle were dead or alive, and if the latter was to be intended, whether they were driven or transported in some vehicle did not appear, and, of course, the law arising out of that state of facts was not, and could not be decided.

Upon the whole, it is the opinion of a majority of this court, that driving living fat oxen, &c. on foot, is not a transportation thereof, within the true intent and meaning of the above-recited act of Congress.

Judgment for the defendant.

a 9 *Cranch*, 243.