## UNITED STATES v. BOOKER.

### (District Court, D. North Dakota. December 9, 1899.)

NATIONAL BANKS — FALSE REPORTS BY OFFICERS — ESSENTIALS OF OFFENSE.
  The president of a national bank cannot be convicted, under Rev. St. § 5209, of the crime of making false entries in reports made by such bank to the comptroller upon evidence that he signed and verified reports containing false entries, where it is also shown that such entries were not made by him, or by his direction.

This was a prosecution of the defendant under Rev. St. § 5209, for making false entries in reports made by a national bank, of which he was president, to the comptroller of the currency. On motion by defendant for direction of a verdict.

P. H. Rourke, U. S. Atty.

Cochrane & Corliss and Alexander Hughes, for defendant.

AMIDON, District Judge. This case has already been before the court on demurrer. See U. S. v. Booker (D. C.) 80 Fed. 376. The defendant is now upon trial under an indictment which charges him with making false entries in four different reports of the Grand Forks National Bank to the comptroller of the currency, in violation of section 5209 of the Revised Statutes. It affirmatively appears by the evidence of the government that the defendant neither made any entry in the reports in question nor directed any other person to do so. His only act in connection with the reports was to sign and verify them, at the request of the assistant cashier, under whose supervision they were prepared; but the evidence tends further to show that defendant made oath to the reports, without instituting any investigation to ascertain their truthfulness; and that, if he had exercised reasonable care and supervision, he would have learned that the entries in question were false. At the close of the government's case, counsel for defendant moves the court to direct a verdict of acquittal, upon the ground that the signing and verifying of a report containing a false entry does not constitute the crime of making a false entry, provided the defendant neither made the entry himself nor directed any other person to do so. If the statute is construed according to the ordinary signification of its terms, the decision of the motion would seem to be easy and plain. Making an entry in a report is certainly not the same act as signing or verifying the report. To be sure, when the cashier or president of a national bank verifies a report of its condition under oath, he thereby certifies that all the statements contained in the report are true, and it is quite possible that he might be indicted for perjury for making a false oath to such a report. But that is not the offense with which the defendant is charged in the indictment. He is charged with making a false entry, and, under the elementary rules of construction applied to criminal statutes, in order to hold him guilty, it must be shown that he either made the false entry himself, or directed some servant or employé under his control to do so. The precise question raised by the motion has never been directly decided, but the supreme court of the United States, in the case of Cochran v. U. S., 157 U. S. 286, 293, 15 Sup. Ct. 628, 39 L. Ed. 704, uses language which clearly indicates the correct decision. In that case the defendants Cochran and Sayre were indicted for making false entries in a report of the condition of a national bank. They themselves prepared the report, and made the false entries, but the report was signed and verified by the cashier of the bank upon their statement that it was correct. The defendants urged as a defense that they could not be held liable, because they did not sign and verify the report. In answering this objection, the supreme court says:

"The argument of the defendants assumes that the making of the entry and the making of the report are the same thing, whereas in fact they are wholly different. By section 5211 the report must be made by the association, and must be verified by the oath or affirmation of the president or cashier, and attested by the signature of at least three of the directors. But, under section

5209, there is no penalty affixed to the association or its officers for making a false report, nor to the president or cashier for verifying such report. The penalty imposed by section 5209 is affixed to the one who makes any false entry in any book, report, or statement of the association, and that penalty is applicable to any officer or agent of the bank who actually makes the entry with intent to injure or defraud or to deceive any agent appointed to examine the affairs of any such association."

Here the supreme court expressly holds that the crime denounced by section 5209 is the making of the false entry, and that "no penalty is affixed to the president or cashier for verifying such report." While this last statement is obiter, it is so clearly consonant with the language of the statute under consideration that it seems conclusive of the question raised by the motion.

It is urged, however, that the act of the defendant is as much within the mischief which section 5209 was intended to provide against as the act of making a false entry, and that, therefore, the court ought, by construction, to bring his act within the statute, because it is within the mischief. But that rule of construction is wholly inadmissible in the case of a penal statute. In U. S. v. Wiltberger, 5 Wheat. 76, 5 L. Ed. 37, the supreme court, speaking by Chief Justice Marshall, answered such a contention as follows:

"The rule that penal laws are to be construed strictly is, perhaps, not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals, and on the plain principle that the power of punishment is vested in the legislative, not in the judicial, department. It is the legislature, not the court, which is to define a crime, and ordain its punishment. It is said that, notwithstanding this rule, the intention of the lawmaker must govern in the construction of penal as well as other statutes. This is true. But this is not a new, independent rule, which subverts the old. It is a modification of the ancient maxim, and amounts to this: That, though penal laws are to be construed strictly, they are not to be construed so strictly as to defeat the obvious intention of the legislature. The maxim is not to be so applied as to narrow the words of the statute to the exclusion of cases which those words, in their ordinary acceptation, or in that sense in which the legislature has obviously used them, would comprehend. The intention of the legislature is to be collected from the words they employ. Where there is no ambiguity in the words, there is no room for construction. The case must be a strong one, indeed, which would justify a court in departing from the plain meaning of words, especially in a penal act, in search of an intention which the words themselves did not suggest. To determine that a case is within the intention of a statute, its language must authorize us to say so. It would be dangerous, indeed, to carry the principle that a case which is within the reason or mischief of a statute is within its provision so far as to punish a crime not enumerated in the statute because it is of equal atrocity, or of kindred character, with those which are enumerated. If this principle has ever been recognized in expounding criminal law, it has been in cases of considerable irritation, which it would be unsafe to consider as precedents forming a general rule for other cases."

The same principle was declared in an able opinion in this circuit by Judges Dillon and Caldwell (U. S. v. Clayton, Fed. Cas. No. 14,-814):

"The principle that the legislative intent is to be found, if possible, in the enactment itself, and that the statutes are not to be extended by construction to cases not fairly and clearly embraced in their terms, is one of great importance to the citizen. The courts have no power to create offenses, but if, by a latitudinarian construction, they construe cases not provided for to be within legislative enactments, it is manifest that the safety and liberty of the

citizen are put in-peril, and that the legislative domain has been invaded. Of course, an enactment is not to be frittered away by forced constructions, by metaphysical niceties, or mere verbal and sharp criticism. Nevertheless the doctrine is fundamental in English and American law that there can be no constructive offenses; that, before a man can be punished, his case must be plainly and unmistakably within the statute; and, if there be any fair doubt whether the statute embraces it, that doubt is to be resolved in favor of the accused. These principles of law admit of no dispute, and have been often declared by the highest courts, and by no tribunal more clearly than the supreme court of the United States. U. S. v. Morris, 14 Pet. 464, 10 L. Ed. 543; U. S. v. Wiltberger, 5 Wheat. 76, 5 L. Ed. 37; U. S. v. Sheldon, 2 Wheat. 119. 4 L. Ed. 199. And see, also, Ferrett v. Atwill, Fed. Cas. No. 4,747; Sedg. St & Const. Law, 324, 334; 1 Bish. Cr. Law, §§ 134, 145."

The recent case of U. S. v. Chase, 135 U. S. 255, 261, 10 Sup. Ct. 756, 34 L. Ed. 117, in which the doctrine now urged might have been allowed to prevail much more plausibly than in the case at bar, is instructive. The statute there under consideration was as follows:

"Every obscene, lewd or lascivious book, pamphlet, picture, paper, writing, print or other publication of an indecent character, * * * and every letter upon the envelope of which, or postal card upon which, indecent, lewd, obscene or lascivious delineations, epithets, terms or language may be written or printed, are hereby declared to be non-mailable matter, and shall not be conveyed in the mails nor delivered from any post-office, nor by any letter carrier," etc. (Rev. St. § 3893); and it is made a crime to deposit any such document in the mail.

The defendant in that case was indicted for violating this statute by depositing in the post office an obscene letter, inclosed in a sealed envelope. The supreme court held that he could not be convicted; that sending an obscene letter in a sealed envelope was not within the crime defined by the statute. But it was urged upon the court that it was at least within the mischief, and in answering that contention the court says:

"Another argument on which indictments of this character have been sustained by some of the circuit courts (U. S. v. Huggett [C. C.] 40 Fed. 636) is that a reasonable construction must be given the statute, and, it being evident that congress intended to exclude anything of an obscene character from the mails, it is immaterial whether the thing prohibited is inside or outside of an envelope, and therefore unreasonable to hold that congress intended not to allow a decent writing in an obscene envelope, but at the same time to allow obscene writing in a proper envelope. We recognize the value of the rule of construing statutes with reference to the evil they were designed to suppress as an important aid in ascertaining the meaning of language in them which is ambiguous, and equally susceptible of conflicting constructions. But this court has repeatedly held that this rule does not apply to instances which are not embraced in the language employed in the statute, or implied from a fair interpretation of its context, even though they may involve the same mischief which the statute was designed to suppress. U. S. v. Sheldon, 2 Wheat. 119, 4 L. Ed. 199; U. S. v. Wiltberger, 5 Wheat. 76, 95, 5 L. Ed. 37; U. S. v. Morris, 14 Pet. 464, 475, 10 L. Ed. 543; U. S. v. Hartwell, 6 Wall. 385, 18 L. Ed. 830; U. S. v. Reese, 92 U. S. 214, 23 L. Ed. 563."

It was for many years contended that a cashier or president who simply directed a clerk in the bank to make a false entry in a report of its condition could not be convicted under the statute we are considering, because it could not be said that he himself made the entry; and in imposing the liability the courts expressly rested their decisions upon the ground that the clerk, in making the false

entry, was the mere instrument of the officer whose direction he obeyed. In re Van Campen, Fed. Cas. No. 16,835; U. S. v. Fish (C. C.) 24 Fed. 585, 594. The rule and its limitations are accurately stated by Judge Sanborn in U. S. v. Allis (C. C.) 73 Fed. 165, 172, as follows:

"A false entry made in the books or reports of the bank by a clerk, bookkeeper, or other subordinate employé or other officer by the command or direction of the president of the bank, is a false entry made by the president, and he is liable to punishment for it under this statute if he gives the direction knowing the entry to be false, and, with the intent explained."

If simply verifying a report containing a false entry made by another constitutes a crime under the national bank act, why have the courts at all times been at such pains to rest their decisions upon the ground that directing the employé to make the false entry was equivalent to making the entry in person?

The result of the case is much to be deplored. Beyond question the act of the defendant in verifying the reports containing false entries is quite as much within the mischief intended to be provided against by the statute as the act of making the false entries. Such acts ought to be made a crime, but the courts have no power to create crimes directly; neither ought they to do so indirectly by forced constructions. The motion must therefore be granted.