THE STATE OF WASHINGTON, *Respondent*, v. JOHN ARTHUR BOYD, *Appellant*.[1]

*Crandell & Crandell,* for appellant.

*Ewing D. Colvin* and *James M. Bailey,* for respondent.

MAIN, J.—The defendant was charged by information with the crime of being a bootlegger. The trial

[1]Reported in 272 Pac. 964.

resulted in a verdict of guilty. From the judgment entered upon the verdict, the defendant appeals.

The facts are these: Early in the afternoon of August 30, 1927, three or four Federal prohibition officers went to house number 1912, Columbia street, in the city of Seattle and located themselves in a room upstairs facing the south. Immediately across the street was a small garage. Before going to the room, one of the officers looked through a window in the garage and saw sacks in the back end thereof, which appeared to contain intoxicating liquor.

Soon after the officers took their position in the room for the purpose of watching the garage, the appellant drove up to the garage in a Dodge coupe, got out of his car, looked up and down the street and up the alley, and in a few minutes was joined by a Mr. Healy. The garage doors were opened and the appellant drove his car into the garage. One of the garage doors was then closed, and the other was left partly open. As to what then took place one of the officers testified:

"Boyd (appellant) got out of his car, removed his coat and opened up the back of his car. The day was clear, and we could see him receiving sacks of whiskey and putting them into the rear compartment of the car, and go toward the front of the garage and come back with a sack of whiskey. He got up on the car, and Smith and I then crossed the street. We went across the street, and I opened the garage door. The defendant was standing up on the back of his car with a sack of liquor in his hands. I remarked, 'See who's here!' And he said, 'Well, the whole gang is here.' Mr. Sadler found Mr. Healy hiding in front of the car in the garage. I asked Mr. Boyd if it was his whiskey, and he said it was. We counted, and found, as I recall it, eight sacks in the car, one in Boyd's hand, and five on the garage floor."

Another witness testified that the appellant, after his arrest, stated that he was going to sell the liquor to Portland bootleggers, and that if he had not been arrested the whiskey would have been in Portland that night. After the arrest the appellant was charged as above stated.

The appellant first contends that he was denied equal protection of the law as guaranteed by the Federal constitution. The argument on this question is based on the assumption that Rem. Comp. Stat., §§ 7328 and 7338, define the same offense and provide different punishments.

By § 7328, any person who "carries about" with him intoxicating liquor, for the purpose of unlawful sale of the same, is a bootlegger and shall be deemed guilty of a felony, and upon conviction shall be punished by imprisonment for not less than one nor more than five years. Section 7338 provides, among other things, that every person convicted of "transporting" any intoxicating liquor with intent to sell the same shall be punished by a fine of not less than two hundred fifty dollars nor more than five hundred dollars, and by imprisonment in the county jail for not less than sixty days nor more than six months. It is said that under these statutes the prosecuting attorney can elect, upon the same state of facts, whether he will prosecute an offender under the bootlegging statute for a felony, or under the transporting statute for a gross misdemeanor.

The argument fails because the two offenses are not identical, as was held in *State v. Peck,* 146 Wash. 101, 261 Pac. 779, after a full discussion of the question. In part it was there said:

"As we have pointed out, the crime of bootlegging consists in the carrying about of intoxicating liquors for the purposes of unlawful sale, either actually by

the person accused or by personally aiding, abetting and assisting another who may do the actual carrying. To be guilty of the second of the offenses, these personal acts are unnecessary. The transportation may be done by another under his order or direction, and he may not be otherwise connected with the act of transportation. The same evidence, therefore, is not required to support a conviction upon a charge of one of the offenses as is required to support a conviction upon the other, and they are separate offenses within the rule.''

In the case of *United States v. Sheldon*, 15 U. S. 119, the court was construing an act of Congress which made it unlawful for any citizen of the United States to transport naval or military stores, arms or munitions of war from the United States to Canada. In the course of the discussion it was there said that ''transport'' as used in the act meant to carry.

That case, however, is not controlling as to the meaning which should be given to the two sections of the statutory law of this state above referred to. We adhere to the holding in the *Peck* case, *supra*.

 The second question is whether the trial court erred in refusing a continuance. On the morning of the day that the case was set for trial, the appellant's counsel appeared in court and moved for a continuance because the appellant at that time was in the hospital, where he had gone the day previous. The deputy prosecuting officer resisted the continuance. The physician who had been consulted by the appellant and under whose direction he went to the hospital, with reference to the appellant's condition testified:

''There was nothing threatening about his condition. He complained of sore throat. Said that he had lost a good many pounds weight; that he was having night sweats, and was coughing very hard. Under the circumstances, those things that suggest to you the

possibility of lung trouble, tubercular condition, I said, 'I shall have to watch you for a little while'."

The doctor further testified that he advised the appellant to go to the hospital for a few days for observation, but said that he could come out. The continuance was denied. The appellant appeared at the trial, but did not take the stand as a witness.

There is no showing that his failure to take the stand was due to his physical condition. There had been two prior trials of the action, and counsel for the appellant was therefore well informed as to what the state's case was likely to be. The appellant called only one witness, and that was a photographer who had taken some pictures at the place where the garage was in which the whiskey was found. Had the appellant been unable to attend the trial, or had there been any showing that he was prejudiced in any way by being required to come from the hospital to be in attendance at the trial, a different situation would be presented. But this case does not fall into either one of those classes.

It is next contended that there was not sufficient evidence to take the question of appellant's guilt to the jury, and that his motion for a directed verdict of not guilty should have been granted.

The answer to this contention must be determined by an inquiry as to whether the appellant was guilty of carrying about liquor, which is one of the elements of the crime of being a bottlegger. From the excerpt quoted above from testimony of one of the state's witnesses, it appears that the appellant carried some of the liquor from the end of the garage, in front of the automobile, to the rear of the car, and placed it in a compartment in the back end thereof. He was also found standing upon the car with a sack of liquor in his hands.

If this testimony was believed by the jury, they had a right to find that the appellant was carrying about liquor, which is prohibited by the statute. In *State v. Meyers,* 121 Wash. 579, 210 Pac. 4, it is said:

"Undoubtedly the statute means what it says, but the 'carrying about' may be a physical carrying such as the jury might have inferred from the evidence in this case appellants themselves employed in transporting the liquor here involved from the beach to the automobile, the bending under the weight of a sack held in the hands, or thrown over the shoulder; . . ."

In the case of *State v. Hessel,* 112 Wash. 53, 191 Pac. 637, it is said that the statute is one against the peddling of liquor as a business, but that case does not specify what acts may constitute the peddling or carrying about. The facts of this case bring it within what was said in *State v. Meyers, supra,* with reference to what would constitute a carrying about.

The appellant objects to certain instructions given by the trial court to the jury and complains of the refusal of the court to give requested instructions. Without reviewing these in detail it may be said that the instructions given were in accordance with the law as this court has repeatedly held it to be and the instructions requested were properly refused because not in accordance with the law.

Finally, it is contended that the trial court commented upon the evidence. During the cross-examination of one of the state's witnesses, counsel for the appellant objected to the witness explaining an answer. A colloquy then took place between the court and counsel, in the presence and hearing of the jury, in which the attorney stated that the witness had shown a willingness to change his testimony, to which the court remarked that that was not a proper statement.

The remark was addressed to the attorney and not to the jury.

In *State v. Herwitz,* 109 Wash. 153, 186 Pac. 290, while cross-examining a witness, counsel for the defendant insinuated that a conversation related by the witness did not occur. The trial court rebuked counsel. It was there said:

"The statement of counsel was in itself improper. It contained the insinuation that, in the belief of counsel, the conversation related by the witness did not occur and that the witness had testified falsely. While at the appropriate time in the course of a trial counsel may properly argue to the jury that a witness's testimony is unworthy of credence because indicative of bias or prejudice, or is out of the ordinary, or for other causes appearing in the record, the appropriate time is not when the witness is testifying. The remark, therefore, merited rebuke, and the court did not overstep its proper bounds in administering a rebuke."

The remark of the trial court in the present case is no more serious than was the remark made by the court in that case. This case does not fall within the other question in that case where it is held that the court had committed error when it interrupted the proceedings and stated to a witness:

"Your record is just as good as anybody's when you are under oath here, as far as this court is concerned, and this jury, too. You are a perfectly credible witness before this court, and you have not been impeached."

There is nothing of that kind in the case now before us.

The judgment will be affirmed.

FULLERTON, C. J., FRENCH, and PARKER, JJ., concur.