(No. 5592.  Decided July 21, 1905.)

THE STATE OF WASHINGTON, *Respondent*, v. JOSEPH
DE PASQUALE, *Appellant*.[1]

CRIMINAL LAW — TRIAL — UNLAWFUL COMMENT ON THE FACTS — CROSS-EXAMINATION BY TRIAL JUDGE.  It is unlawful comment on the facts, within the meaning of the constitution, for the trial judge in a criminal case to cross-examine the accused, asking leading questions calculated to discredit the witness, and clearly conveying the idea to the jury that, in the opinion of the court, the accused is guilty and his defense not *bona fide*.

Appeal from a judgment for the superior court for Walla Walla county, Brents, J., entered November 1, 1904, upon a trial and conviction of the crime of manslaughter.  Reversed.

*George T. Thompson* and *Oscar Cain*, for appellant.
*Lester S. Wilson*, for respondent.

MOUNT, C. J.—Appellant was charged with the crime of murder in the first degree, for killing one Dominic Di Valerio. He was tried and found guilty of the crime of manslaughter, and appeals from a judgment entered thereon.

The evidence shows that, at the time of the tragedy, the appellant was employed with a number of other Italians, in paving certain streets in the city of Walla Walla; that the appellant and deceased, Di Valerio, with several other of their countrymen, resided in a small house in said city; that on the 23d day of September, 1904, the appellant and the deceased, while they were in a saloon together, had some words concerning their employment.  They called each other vile names, and were prevented from coming to blows by the intervention of friends.  Soon after this quarrel, both proceeded to their abode.  Appellant reached there ahead of Di Valerio.  When Di Valerio came into the house, the quarrel was renewed.  After they had quarreled and threat-

1Reported in 81 Pac. 689.

ened each other for some time, Di Valerio went out of the house by the front door, and appellant went out by the kitchen or back door. Each was armed with a pistol, and each advanced toward the other from around the outside of the house. When they came within sight of each other, appellant fired at Di Valerio, the ball taking effect and resulting in his death. Appellant thereupon fled, but was apprehended a few days later. Appellant attempted to justify the killing upon the ground of self-defense.

Three errors are assigned upon this appeal: (1) That the court erred in commenting upon the evidence; (2) that the court erred in permitting a witness to testify that the appellant had attempted to secure the discharge of the deceased from his employment on the day before the killing; and (3) that the court erred in denying appellant's motion for a new trial upon the ground of misconduct of the jury. We shall not discuss the last two errors assigned because they are without merit, and besides are wholly unimportant.

But we are satisfied, after an examination of the record, that the conduct of the trial court amounted to a comment upon the facts, and that, for this reason, the first assignment of error is a meritorious one. It appears that, at the close of the evidence, while the appellant was upon the witness stand giving evidence in his own behalf, and after he had been examined by his own counsel and cross-examined by the prosecuting attorney, the judge left his seat upon the bench and stood near the appellant, who had been illustrating his evidence by a plat upon the floor in front of the jury, and subjected the appellant to the following examination:

"The Court: Did you see him before he saw you? Answer: Yes, sir. The Court: Did you holler at him before he saw you? A. Yes, sir. The Court: Could he see you up there? A. He could see about half of me. The Court: When he went in the front, did you expect him to come around there to fight you with a pistol? A. Yes, I sup-

posed he would come in the kitchen and shoot. The Court: Did you go out with the expectation of fighting him with a pistol? A. He had a pistol. He said, 'I have to blow you out and eat your heart.' The Court: Did you go out intending to shoot him? A. I was standing in the door when I saw the revolver like that, just like that, I saw him like that. The Court: He didn't see you? A. No, I said, 'Stop, don't you come here any more, keep away from here.' I said that three times in combination. I was afraid he would shoot me. I shot like that and turned this way. I turned back this way. He turned this way. Then I go this way. I run this way and found a fence. The Court: Before you went out then, you thought he was going around this way to shoot you? While you were in the house you thought he was going around to shoot? A. When I started out? The Court: Did you think he was going out with his pistol? A. I was looking to see what he done, when I saw him like that. I said, 'Dominic, stop, get out from here.' He was coming as fast as he can and I jumped off like that. I went this way and he went that way. The Court: You thought, didn't you, that he was going around there to shoot? A. Yes, he told me. The Court: You went out there with a pistol expecting to meet him and have a shooting scrape with him? A. I was shooting for my life. The Court: Did you say to him anything about going out to shoot? A. No sir, I did not. I was telling him to take off his revolver and coat and everything and go out and fight a fist fight. . . . The Court: If you had stayed inside, wouldn't you have been safe? A. This door been closed. The Court: When he went outside, if you had stayed inside, wouldn't you have been safe? A. If I stay in this room he come in and shoot me in the door. Then I would have been dead where he is now. If I stop in this room, he would kill me. I go out doors and then I see him coming this way with a revolver. I said, 'Dominic, stop, keep away from here.' Then I shoot and I run this way and he that way. The Court: At the time you stepped out and shot was he aiming his revolver at you? A. He didn't know where I was. The Court: He didn't know where you were when? A. When I hollered he was looking, he didn't know whether I was close to the fence or at the house."

There can be no doubt that the court, by such questions as the following: "You went out there with a pistol expecting to meet him and have a shooting scrape with him?" "Did you say anything to him about going to shoot?" "If you had stayed inside, wouldn't you have been safe?" "When he went outside, if you had stayed inside, wouldn't you have been safe?"—clearly conveyed the idea to the jury that the appellant was at least guilty of manslaughter, and that the plea of self-defense was not *bona fide,* in the opinion of the court. These questions are in the nature of a cross-examination by the prosecuting attorney, and calculated to discredit the witness. They would not be improper if asked by that officer, but when asked by the trial judge, they show his opinion of the case, rather than a desire on the part of an impartial judge to permit the witness to make his evidence more clearly understood. The examination of the appellant in this case was, we think, more clearly within the constitutional inhibition than the examination in *State v. Crotts,* 22 Wash. 245, 60 Pac. 403, where we said:

"There are different ways by which a judge may comment upon the testimony, within the meaning of the constitution referred to above. The object of the constitutional provision, doubtless, is to prevent the jury from being influenced by knowledge conveyed to it by the court of what the court's opinion is on the testimony submitted. The constitution has made the jury the sole judge of the weight of the testimony and of the credibility of the witnesses, and it is a fact well and universally known by courts and practitioners that the ordinary juror is always anxious to obtain the opinion of the court on matters which are submitted to his discretion, and that such opinion, if known to the juror, has a great influence upon the final determination of the issues. This information can be conveyed as readily to the jury by leading questions asked of them, and the manner of the judge in asking such questions, as by a direct comment upon the testimony in the charge to the jury."

The *Crotts* case was reversed solely upon the ground that the examination of a witness by the court amounted to a comment upon the facts. While the evidence in this case may show that the appellant is guilty of the crime of manslaughter, yet the appellant has a constitutional right to have the question of his guilt determined by a jury uninfluenced by the opinion of the trial judge.

The judgment must therefore be reversed, and the cause remanded for a new trial.

DUNBAR, CROW, ROOT, HADLEY, FULLERTON, and RUDKIN, JJ., concur.