[No. 10619.   Department One.   January 25, 1913.]

THE STATE OF WASHINGTON, *Respondent*, v. CHARLES P. BENNETT, *Appellant*.[1]

CRIMINAL LAW—TRIAL—MISCONDUCT OF JUROR—SEPARATION—PREJUDICE.   Under our statutes, Rem. & Bal. Code, § 2159, requiring jurors in criminal cases to be kept together, except in cases of misdemeanors under Id., § 346, it is reversible error in a felony case for a juror to separate from his fellows, and it is not permissible for him to excuse his conduct and show that no prejudice resulted.

SAME—SEPARATION OF JURY—WAIVER—OBJECTIONS—SUFFICIENCY. A separation of the jurors in a felony case, known to the court and objected to by the defendant at the time, is not waived because the objection or protest was technically insufficient or not put in apt words, and it can thereafter be raised on motion for a new trial.

Appeal from a judgment of the superior court for Ferry county, Bell, J., entered May 17, 1912, upon a trial and conviction of embezzlement.   Reversed.

[1]Reported in 129 Pac. 409.

22—71 WASH.

*James T. Johnson, Frank M. Allyn,* and *W. C. Stayt*
(*Samuel Porter,* of counsel), for appellant.

*John W. Matthews,* for respondent.

CHADWICK, J.—The appellant was convicted of the crime
of embezzlement, and brings his case here on appeal.

Among the errors assigned, few are possessed of merit.
During the progress of the trial and while the jury was pass-
ing along the street in charge of two bailiffs, one of the
jurors stopped and had some conversation with some by-
standers. He then went into a lunch counter which occupied
a storeroom with a cigar store, the two being separated by
a partition seven feet high, with an open door or archway
between the two places. The juror ordered and ate his sup-
per and then went out. The remaining jurors were taken
to a hotel, and were there given their supper. The absence
of the juror was not immediately noticed. It would seem
to us from the record that the juror finished his meal about
the time his absence was noted. He was recovered by the
bailiff, and from that time on, the jury was kept together.
He was away from twenty to thirty minutes and talked with
several persons. On the next morning, the matter having
come to the notice of the trial judge, the following colloquy
ensued:

"The Court: It was reported to the court last evening
that one of the jurors in this case separated for a few min-
utes from the other jurors; I think the juror was Mr.
Edberg. Mr. Edberg, did you separate from the other
jurors? Mr. Edberg: I did; I didn't understand that the
jury was to stay together. The Court: You say you did
not understand that the jury was to be kept together? Mr.
Edberg: No. The Court: Where did you go after you sep-
arated from the jury? Mr. Edberg: Just went into a res-
taurant and had my supper. The Court: Just went into a
restaurant and had your supper? Mr. Edberg: Yes, sir.
The Court: Did you talk to any one? Mr. Edberg: No.
Mr. Stayt: If your Honor please, we object to this pro-
ceeding. The Court: This is on the motion of the Court.

I shall take the privilege of questioning the juror. Did any-one talk to you at that time? Mr. Edberg: No, sir. The Court: Did you speak to any one at all? Mr. Edberg: No, sir. The Court: What did you do, did you eat your supper at the restaurant? Mr. Edberg: Yes, sir. The Court: Then what did you do? Mr. Edberg: Stood out on the steps on the sidewalk and then went down the street to find the other jurors. The Court: Went down the sidewalk to find the other jurors. Mr. Edberg: Yes, sir. The Court: And didn't speak to any one from the time you left the jury until you again met them? Mr. Edberg: No. The Court: I want to instruct all the jurors that they are not to drop out or separate, even though the bailiffs should not see them. Every juror must understand that it is as much his duty to stay with the other jurors as it is the bailiffs' to see that he stays there, and each juror must consider it his duty, and it is your oath, as jurors, that you will remain together and not separate until the case is brought to an issue and you have brought in a verdict. The Court: To defendant's at-torneys: If you wish to make any objections, you may do so. Mr. Stayt: We object to the whole procedure, your Honor, and except to the action of the Court. The Court: Exception allowed. Mr. Stayt: I guess we can proceed, your Honor. Judge Neal will resume the stand."

Several of the jurors made affidavit, saying that the juror did not refer to any one who had talked about the case in his presence during his absence, nor did he say that he talked with any one. The offending juror made affidavit exonerat-ing himself from all intentional fault.

It will be seen that the affidavits of the jurors are wholly insufficient to cure the error, if we adhere to the rule that the separation of a juror from the body of the jury in a felony case is reversible error. It is not denied that the case will have to be reversed if the rule laid down by this court in the case of *State v. Place*, 5 Wash. 773, 32 Pac. 736, and *State v. Strodemeir*, 41 Wash. 159, 83 Pac. 22, 111 Am. St. 1012, is followed; but it is contended, (a) that these cases are opposed to the general rule and should be overruled; that the dissenting opinions filed in each of them state the true

rule of practice; (b) that this court has declared a different and a better rule in the case of *State v. Pepoon*, 62 Wash. 635, 114 Pac. 449; and (c) that defendant did not sufficiently reserve an exception to the misconduct of the juror.

While it is true that our decisions, when read in the light of certain texts followed by the citation of adjudged cases, may seem to be out of harmony with that practice which requires a showing of actual prejudice, yet, when viewed in the light of the history of the law and our statute, it seems to us that the cases criticised were correctly decided.   Anciently a separation of the jurors was fatal in all cases.  This rule was relaxed so that a separation was allowed in all civil cases and latterly in cases of misdemeanors.   These distinctions found their way into our statutes, Rem. & Bal. Code, §§ 346, 2159.   These statutes, when construed together, are quite as positive as the ancient rule, and the basis for the order of association of the jurors pending the trial is to be found in the statute and not in the order of the court.   The *Place* and *Strodemeir* cases were put upon the statute.   It may well be that, where the order to keep the jury together is based upon a discretionary order of the court, an appellate court should say, in furtherance of justice, that the case will not be reversed unless prejudice be shown; and so far as we have looked into the authorities holding that an affirmative showing of prejudice must be made, the order was discretionary with the court and did not rest upon a statute. Whatever the rule may be elsewhere, the people of this state have seen fit to say, through the legislative body, that a defendant shall have not only a fair trial, but the semblance of a fair trial, for the reason, no doubt, that the danger of allowing a juror to pass upon his own delinquency would be quite as dangerous as the vice at which the statute is aimed. Any juror who would put himself in a situation where he might seek counsel or be subject to the approach of friends should not be heard to say that he did not intend a wrong, or did not talk upon the subject of the case.   If such con-

struction be put upon our statute, it would be shorn of its vitality, for no defendant could ever rebut such a showing or prove a conversation against the will of the participants. It is not so much what may have been done, as what might be done. Our statute furnishes the rule of practice in this state and it must be followed, unless we have decided to the contrary in the later case of *State v. Pepoon*, 62 Wash. 635, 114 Pac. 449. In that case, we said:

"But the claim of error resting exclusively on the theory that some juror might possibly have been subjected to undue influence, the assignment, under the great weight of authority, cannot be sustained."

It was upon the authority of this case, as we understand, that the lower court denied the motion for a new trial. While inclined to follow, in all proper cases, the logic, if not the rhetoric, of the case just cited, it must be remembered that the act here complained of was not violative of the statute, but was within the bound of its permissive limitations. In the absence of a statute, prejudice will not be presumed. This is the holding in the *Pepoon* case; but where the statute says thou shalt or thou shalt not, a presumption of prejudice follows, and such was the rule in the *Place*, *Strodemeir*, and the cases hereinafter referred to.

Finally, it is contended that, conceding the act of the juror to have been error, appellant must be held to have waived his advantage. If it were a matter of practice only, we would not hesitate to hold that the error was waived; but as we have seen, it was not a breach of a mere rule of practice or a discretionary order of the court, but a violation of the substantive law of our commonwealth. It was enough that the court knew of the misconduct of the juror and that the defendant objected thereto. Neither the burden nor the benefit of a statute depends upon the will of the individual. *Linbeck v. State*, 1 Wash. 336, 25 Pac. 452; *State v. Myers*, 8 Wash. 177, 35 Pac. 580. Statutes are the expression of the will of society, and to hold that an accused party should

lose the benefit of a protective statute because his objection or protest is technically insufficient, or is not put in apt words or phrase, would be to deny its benefit in many cases. Moreover, the subject was introduced by the court and passed upon by him without suggestion or assistance of counsel. It is enough that the question was before the court at the time of the trial. It was then the duty of counsel to proceed as ordered by the court, for his right to urge the question upon motion for a new trial or upon appeal remained.

Other errors, going to the instructions given and refused, are urged. It will serve no purpose to review these assignments singly. The instructions as given generally state the law. In one or two it may seem that the court assumes disputed facts to have been proven, and in one or two instances we think the instructions do not have the sustaining grace of evidence to support them; but we will assume that, in the event of a new trial, the court will prepare his instructions to meet the case as then presented. The instructions can be very materially simplified. There is but one issue. Defendant was the administrator of an estate. Upon the rendition and approval of the final account, the court found that he had in his possession moneys and properties belonging to the estate. He failed to pay over or distribute the trust funds upon demand. The only question of law, therefore, is whether he is guilty of embezzlement as that term is defined in our statutes.

The judgment of the lower court is reversed, and the case remanded for a new trial.

CROW, C. J., MOUNT, GOSE, and PARKER, JJ., concur.