[No. 17050.   Department One.   October 18, 1922.]

THE STATE OF WASHINGTON, *Respondent*, v. C. W. MEYERS *et al., Appellants.*[1]

INDICTMENT AND INFORMATION (71, 72)—INTOXICATING LIQUORS (42)—JOINDER OF PARTIES—DUPLICITY. An information charging four persons, severally and individually, with bootlegging, practically in the language of the statute, is sufficient without any allegation that they joined in the same acts, where it charged but one crime.

CRIMINAL LAW (196)—TRIAL—FURNISHING BILL OF PARTICULARS. Under an information charging four persons with the crime of bootlegging, practically in the language of the statute, and charging but one offense, prejudicial error can not be assigned on refusing a bill of particulars, which might show that each of the four committed the unlawful act at a different and distinct time and by a different method, entitling the appellants to a separate trial, where one of the defendants was acquitted, another was granted a separate trial, and the evidence showed that the appellants acted in concert throughout.

SAME (217)—TRIAL—COMMENT ON FACTS UPON RULING ON EVIDENCE. Unlawful comment on the evidence can not be assigned on the reasons given to counsel in ruling on the admission of evidence, where there was nothing said warranting serious criticism.

[1]Reported in 210 Pac. 4.

INTOXICATING LIQUORS (51) — PROSECUTIONS — INSTRUCTIONS — PRE-
SUMPTION FROM POSSESSION. In a liquor prosecution, it is not error
to instruct that the rule as to the presumption of innocence is
changed to the extent that, when defendant's unlawful possession
is proven to the satisfaction of the jury, the jury may presume
that it was held for the purpose of unlawful sale or disposition.

SAME (51). An instruction as to the presumption from the un-
lawful possession of liquor that it was kept for unlawful sale or
disposition is particularly apt and proper in a prosecution in which
it appears that repeated trips to British Columbia were made to
bring large quantities of liquor to this state.

SAME (51). A requested instruction in a bootlegging case that
the statutory words "did carry about" mean in plain English what
they say, and that no defendant can be found guilty unless the al-
legation was proved beyond all reasonable doubt, is properly re-
fused, where it did not advise the jury what "carry about" might
mean under the evidence.

SAME (51). A request in a bootlegging case that the possession
of intoxicating liquor must have been with the purpose of unlawful
sale in that county, is properly modified to apply to the entire state.

APPEAL (349) — CRIMINAL LAW (423) — ASSIGNMENT OF ERROR —
POINTS NOT ARGUED. An assignment of error not argued and to
which no authority is cited will not be considered on appeal, where
it appears that no miscarriage of justice will result therefrom.

Appeal from a judgment of the superior court for
Skagit county, Smith, J., entered September 2, 1921,
upon a trial and conviction of bootlegging. Affirmed.

*Charles P. Murphy*, for appellants.

*W. L. Brickey* and *W. H. Hodge*, for respondent.

TOLMAN, J.—Appellants appeal from a conviction on
the charge of bootlegging.

Many errors are assigned, and to discuss under-
standingly such points as we think need discussion, a
brief statement of the facts involved is required. The
principal witness for the state upon the trial below
was a man named Harvey Hopley, who lived on Samish
Island, in Skagit county, and operated a gas boat for a
livelihood. He testified, after claiming immunity, that

appellant Meyers visited him at his home in February preceding the offense charged in the information, and made arrangements by which Hopley should go to British Columbia with his boat and bring "stuff" back into this state, to be unloaded near his home, he to be paid $150 for each trip made, and his fines, if any, paid. That, shortly after the conversation referred to, a trip was made, but no "stuff" was obtained, it having been stolen before the boat arrived at the place where it was held.

About April 25, following the unsuccessful trip, Hopley was called on the telephone by a person whom he thought to be Meyers, who said he would be down in three or four days, or would send a man down. A day or so later, appellant Wilhelmson telephoned that he would be down the next day, and asked Hopley to meet him. On the strength of these messages, Hopley provided oil and gas for his boat and made preparations for another trip. He met Wilhelmson according to appointment, took him to the hotel on Samish Island known as Lummi Lodge, conducted by one Knause, and there made arrangements with him to start with his boat, with Wilhelmson on board, at 9 o'clock that night, for Vancouver, British Columbia.

The voyage to Vancouver was undertaken as agreed, occupied eleven hours, and on arrival the witness docked his boat as directed by Wilhelmson, and then went to a hotel where he met appellant Meyers a short time later, and Meyers told him to be at his boat at 8:30 o'clock in the evening. Witness went to his boat as directed, and at about the hour mentioned, a truck arrived loaded with sacks which were transferred to his boat, and witness started on the return trip, accompanied by Wilhelmson, arriving at Samish Island about 9 o'clock on the morning of May 1. The sacks

were left on the gas boat until about 12 o'clock that night, when the witness, assisted by Wilhelmson, transferred the sacks to a skiff, and the witness rowed the skiff to the beach, directly in front of the Lummi Lodge Hotel, where he unloaded the thirty sacks which made up his cargo onto the beach near a small tree, and above the flow of the tide.

At the time of unloading, he saw Meyers in front of the hotel, asked him for money, and was told that the money was in the bank, and that he would get it in a few days. He then saw a large, enclosed automobile standing near the hotel. His description of it clearly identifies it as being the machine found there by the sheriff the next morning. The witness professed not to know what was in the sacks, which he transported, supposed that they contained liquor, and says he was told by Meyers to dump it all overboard if he met a revenue cutter.

The sheriff and his deputies testified to starting at about the hour when Hopley was unloading the sacks on the beach, driving to a point where they intercepted the only road leading from Samish Island, barracading the road, and waiting there until 5 o'clock in the morning. They then drove on to the hotel, saw a big enclosed automobile with two men, supposed to be the appellants, standing beside it, who, seeing the sheriff approach, ran into the hotel. They were followed and arrested by the deputies, no other guests being found in the hotel, and no evidence found that there were other guests then occupying the hotel. Meyers, according to the sheriff's testimony admitted his identity, admitted the ownership of the car, and of the twenty-three sacks of liquor found therein.

Appellants' first contention is that the trial court erred in denying their demand for a bill of particulars,

in overruling their demurrer to the information, and in denying them separate trials, all of which rulings are embraced in one order. The information charges George Knause, the proprietor of the hotel, the witness, Harvey Hopper (Hopley), and the two appellants, by name, with the crime of bootlegging committed as follows:

"Then and there being at or near Samish Island, Skagit County, Washington, and on or about the 2nd day of May, 1921, the said defendants and each of them, did wilfully, unlawfully and feloniously carry about with them, for the purpose of unlawful sale thereof, certain intoxicating liquor, to wit: a liquor or liquid capable of being used as a beverage and containing intoxicating properties, to wit: alcohol, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of Washington."

The fault claimed in the information, as we understand it, being that each one of the four is charged severally and individually, with no allegation that they joined in the same act or acts, and that each of the four may have committed the unlawful act at a different and distinct time, and by a different method. It is claimed that, if a bill of particulars had been ordered, the facts thus brought out would have tended to show distinct offenses; and if the offenses were distinct, separate trials should have been granted.

Whatever might be said on behalf of Knause, who was acquitted by the jury, or Hopley, who was granted a separate trial, it would seem that they and they alone were adversely affected by these rulings; for the evidence, without any contradiction, shows that the appellants acted in concert throughout, and we cannot conceive that they suffered any prejudice from the rulings complained of. The information charged but a single crime, and that practically in the language of the stat-

ute. The demurrer was therefore properly overruled. *State v. Columbus*, 74 Wash. 290, 133 Pac. 455. The other matters referred to rest largely in the discretion of the trial court, and no abuse of discretion is shown.

Appellants next claim that the trial court commented on the testimony in ruling on objections made to certain questions propounded by the state, and to the offer in evidence of certain exhibits. The court was in duty bound to rule on such questions as they arose in the course of the trial, and no doubt, as must often be the case, found it advisable to give counsel the benefit of his reasons for the ruling. It is quite impossible to always so weigh every word before it is uttered as to anticipate and guard against possible criticism of ingenious counsel, but nothing here said by the court, in our judgment, warrants serious criticism.

The court gave an instruction in which the following language was used: "While you have heretofore been instructed that defendant is to be presumed innocent of any offense charged, yet, the statute has, with reference to intoxicating liquor, changed this rule to the extent that, when it has been proven to the satisfaction of the jury that a person is or was in the unlawful possession of intoxicating liquor, then the jury may presume that such possession was held for the purpose of the unlawful sale or disposition of the same."

Appellants seem to contend that this instruction is not applicable to the facts in this case. We think it is, but of that we will speak in a moment. They further contend that it is erroneous, or at least confusing, in so far as the jury are thereby told that the rule with reference to the presumption of innocence of the person charged with crime is changed by the terms of the statute under which appellants were prosecuted. The instruction might be more happily worded, but as was said in *State v. Gray*, 98 Wash. 279, 167 Pac. 951:

"It may be speciously argued that to indulge the statutory *prima facie* presumption of unlawful possession from the mere fact of possession is to presume against the universal presumption of innocence. But the presumption of innocence, though universal, is a refragable presumption. It must yield to evidence; else a conviction could never stand in any case. The statutory presumption is an evidential presumption expressly made sufficient in itself *prima facie* to overcome the presumption of innocence; else the statute has no meaning at all."

We cannot, therefore, think that the jury was in anywise misled by the language used. That this instruction is applicable to the evidence becomes apparent when the testimony is considered, and to so apply it does no violence to anything said in *State v. Brown, ante* p. 371, 209 Pac. 855, and *State v. Hodges, ante* p. 362, 209 Pac. 843. The evidence of repeated trips for the purpose of obtaining liquor, and the quantity brought in, are among the features which might properly convince the jury that the possession was for the purpose of unlawful sale, rather than some other unlawful disposition, and bring the case within the rule laid down in *State v. Jewett,* 120 Wash. 36, 207 Pac. 3; the more so in that the included charge of unlawful possession was submitted to the jury.

Other instructions given are criticized, but aside from an obvious typographical error in one, which could not prejudice appellants, we think they were proper.

Complaint is made of the refusal to give a requested instruction in which the following language is used:

"The court instructs you that the words 'did carry about with them' mean in plain English what they say, and that you cannot find any defendant in this cause guilty of the offense charged in this information unless

you find beyond all reasonable doubt that this allegation has been proven by the State.''

Undoubtedly the statute means what it says, but the ''carrying about'' may be a physical carrying such as the jury might have inferred from the evidence in this case appellants themselves employed in transporting the liquor here involved from the beach to the automobile, the bending under the weight of a sack held in the hands, or thrown over the shoulder; or, a carrying by means of a personally controlled vehicle, such as would have been the case had appellants proceeded with their loaded automobile to the barracade erected in the road by the sheriff; or, it may be carried about by a servant, agent, employee, or confederate, such as the bringing of the liquor to the beach by Hopley under the direction and by the procurement of appellants. Hopley's act in carrying the liquor up the beach, even if done in the absence of appellants, might have been their act as fully and completely as though done by them in person, therefore the instruction in the form requested was not proper because it did not advise the jury of all that ''did carry about with them'' might mean under the evidence in the case.

Appellants also requested an instruction to the effect that the carrying about must be for the purpose of unlawful sale thereof in Skagit county. The court gave this instruction in form as requested, except that he substituted ''the State of Washington'' for ''Skagit county.'' We think the court committed no error in striking out the words ''Skagit county.'' The gist of the offense is the carrying about for the purpose of unlawful sale, and ordinarily the sale will be made when and where suitable opportunity is offered. There is nothing in the statute which indicates that the legislature intended that the state must prove the manner

in which it is intended to make the sale. The intent to sell to anyone, at any time, anywhere within the state, is as favorable to appellants as they can ask, and since the state is not complaining, we have not considered the possibility that there should have been no limitation as to place of sale, whatever.

Appellants requested an instruction to the effect that, if Hopley was promised immunity, or leniency, or, if any inducements were held out to him by the state, such fact should be considered in weighing his testimony. Error is assigned upon the refusal to give this instruction, but this assignment is not argued, and no authority is cited to sustain it. In view of the full argument and citation of authorities upon other points involved, it would seem that counsel either has no faith in this assignment of error, or expects us to make an independent examination of the question. This we must decline to do, leaving the question, if it be an open one, to be determined when properly presented, confident that our action in so doing will result in no miscarriage of justice, as juries are always instructed that they are the sole judges of the credibility of the witnesses, and may consider their interest or lack of interest in the outcome of the case, and the like.

Enough has been said to indicate that there was no error in refusing a directed verdict of not guilty, and we will not enlarge upon that subject.

Finding no reversible error, the judgment appealed from is affirmed.

PARKER, C. J., BRIDGES, and MITCHELL, JJ., concur.

FULLERTON, J., concurs in the result.