[No. 32404   Department One.   October 23, 1953.]

THE STATE OF WASHINGTON, *Respondent*, v. HARRISON B. ROSE, *Appellant*.[1]

*Edmund T. Brigham*, for appellant.

*Norman A. Ericson, Jay Roy Jones*, and *Thomas I. Oakshott*, for respondent.

[1] Reported in 262 P. (2d) 194.

WEAVER, J.—The defendant, Harrison B. Rose, was charged by information with the crime of murder in the first degree. The jury found him guilty of manslaughter. Defendant's motion for a new trial was denied. He was sentenced to not more than twenty years in the penitentiary. He has appealed from the judgment and sentence and from the order denying a new trial.

The sole assignment of error is the alleged abuse of discretion by the trial judge in denying the motion for a new trial. Appellant urges that the motion should have been granted because of numerous alleged acts of misconduct by the jury occurring during the course of the trial. In support of his contention, appellant filed seven affidavits made by jurors, attorneys, and strangers to the proceeding, in which three separate categories of misconduct are set forth. These affidavits are uncontroverted by the state, and we therefore accept the statements made therein as a portrayal of the truth.

The acts of misconduct by the jury, occurring during the course of the six-day trial, are these:

(A) *Entry of jury room by unauthorized person with a document for a juror.*

One evening during the course of the trial, after the jury had been empaneled and sworn but before it had been charged, Mrs. E. G. Hill, wife of E. G. Hill, a member of the jury, entered the jury room. She exhibited some sort of paper to him. He signed it. One affiant quoted Mrs. Hill as saying it was a check for his endorsement. One affiant described the paper as "some sort of large paper or document." As she left the jury room with the paper or document, she said to her husband, "I want to go on a fling-ding tomorrow night," or words to that effect.

(B) *Communications with or by jurors.*

(1) About 10:30 p. m., on October 11, 1952, while waiting for the jury to return its verdict, one affiant swore that Mrs. Glen Chitwood, wife of one of the jurors, stated to affiant that she had talked to her juror husband when the jury had returned to the court house from dinner. He had told her,

"Wait to take me home to-night because I will be going home to-night."

(2) The jury took its meals in the cocktail lounge of a cafe. Mrs. E. G. Hill, wife of a juror, was seen by affiant (also a juror) leaving her own table in the lounge and talking to her juror husband.

(3) One evening, two jurors were seen with newspapers in their possession at the dinner table.

(4) One juror's affidavit states:

"On another evening, I am almost positive it was the evening of October 11 [the case was submitted to the jury on that night], I saw Mrs. E. G. Hill, above identified [wife of a juror], come over to the juror's private table, mark something off on their menus, and then pass out the menus again to the jurors; at that time, she talked to her husband, E. G. Hill, juror above identified; I do not know what they said to each other; she was not then a waitress or other employee of that establishment; she was just a patron of it, like the rest of the public."

(5) The bartender in the cafe states that he saw one member of the jury use the public telephone some distance from the dining room; that he did not see a bailiff with the juror using the phone.

(C) *Separation of Jury.*

(1) The juror using the public telephone, as above described, was separated from the other jurors.

(2) During the week of the trial, on different occasions several of the jurors, unaccompanied by a bailiff, left the dining table, approached the bar, cashed checks, and purchased cigars and cigarettes.

(3) Throughout the week of the trial, while in the cafe, men members of the jury, singly and together, repeatedly left the other jurors and went into the men's public rest room unattended by a bailiff.

The record shows the bailiffs were sworn to perform their duties. Those duties are defined in Rem. Rev. Stat., § 2329 [cf. RCW 9.51.030], as follows:

"Every person to whose charge a jury shall be committed by a court or magistrate, who shall knowingly, without leave of such court or magistrate, permit them or any one of them

to receive any communication from any person, to make any communication to any person, to obtain or receive any book, paper or refreshment, or to leave the jury-room, shall be guilty of a gross misdemeanor."

■ Those acts which by statute the bailiffs are required to prevent, under penalty of punishment, are acts which are prohibited to the jury.

In addition, RCW 10.49.110, Rem. Rev. Stat., § 2159, provides:

"Juries in criminal cases shall not be allowed to separate, except by consent of the defendant and the prosecuting attorney [there was no consent in this case], but shall be kept together, without meat or drink, unless otherwise ordered by the court, to be furnished at the expense of the county."

The state, not having controverted the facts, confines its argument to the proposition that the appellant has failed to make an affirmative showing that his substantial rights were prejudiced. Under certain circumstances, appellant is required to make such a showing. See *State v. Smith, ante* p. 307, 261 P. (2d) 109 (1953), wherein it was held that it was not error for the bailiff to request the jury to be more quiet in its deliberations because its discussion was audible in the courtroom where defendant was present. This court has also held that it would not presume that a sworn officer of the court, whose duty it was to have charge of the jury, had been guilty of misconduct; and, although there had been a technical breach, it was not prejudicial in the absence of an affirmative showing. *State v. Aker,* 54 Wash. 342, 103 Pac. 420 (1909). In the face of the record before us, however, it would be unreal to indulge in any presumption that the bailiffs performed their duties.

Standing alone and without any showing of actual prejudice, or met by an affirmative showing that no actual prejudice resulted, some of the incidents of which complaint is made would not warrant a reversal. However, some of the incidents are direct violations of the statute; they are not violations of a discretionary order of the trial court. Judge Chadwick, speaking for the court in *State v. Bennett,* 71 Wash. 673, 677, 129 Pac. 409 (1913), said:

"In the absence of a statute, prejudice will not be presumed. This is the holding in the *Pepoon* case [*State v. Pepoon*, 62 Wash. 635, 114 Pac. 449]; but where the statute says thou shalt or thou shalt not, a presumption of prejudice follows."

There is here a *prima facie* presumption of prejudice. The burden was upon the state to show that no prejudice actually resulted. *State v. Amundsen,* 37 Wn. (2d) 356, 223 P. (2d) 1067 (1950). This the state did not do. It failed to file any affidavit, even explanatory, of *any* of the alleged acts of jury misconduct.

The motion for a new trial should have been granted. The judgment is reversed.

GRADY, C. J., MALLERY, HILL, and OLSON, JJ., concur.