[No. 35971. En Banc. May 29, 1963.]

THE STATE OF WASHINGTON, *Respondent*, v. FREDDIE CHARLES BOGNER, *Appellant*.*

---

\* Reported in 382 P. (2d) 254.

*Hugh R. McGough*, for appellant.

*Charles O. Carroll, Murray A. McLeod*, and *Frank L. Sullivan*, for respondent.

DONWORTH, J.—This is an appeal from a judgment and sentence based upon a conviction of robbery in violation of RCW 9.75.010.

Evidence adduced at the trial indicated that:

About 3 p.m., November 1, 1960, a man entered the office of the High Point Housing project. He had a handkerchief over his face and carried a gun. He pointed the gun at the cashier, said "Give me the money," and tossed a paper sack to the cashier. The cashier placed the money (about $1400) in the sack, along with a petty cash slip indicating payment of $1.75 for cleaning of some overalls. Appellant's car was seen driving away from the area. A short time later, he was picked up, and the sack containing the money and the petty cash slip, along with the gun, was found in the car he had been driving. (Appellant's explanation — subsequently given during his own testimony—was that he had been parked outside the housing project office when someone ran by and threw the sack and the gun into his car, which caused him to panic and drive off.)

By his assignments of error, appellant has raised several contentions on this appeal. We shall first consider his con-

tention that the trial court made a "comment on the evidence."

The following colloquy between the court and counsel for the defense took place at the trial during the state's examination of a policeman:

"Q. Upon arriving at the office of the Project what did you find? A. Well, on our arrival we discovered Detective Panton had already arrived and that the person that had performed the stick-up had left. Mr. Haley: I will object to the conclusion of the officer here. Mr. Sullivan: He can state this. Perhaps he was still there then. The Court: Are you denying that there was a robbery at the housing project at that time on that date? Mr. Haley: I don't know, your Honor. I think that is what we are here to determine. The Court: We are here to determine, as I understand it, who did it, if anyone. Mr. Haley: Of course, we have a two-fold purpose. We are trying to determine whether or not there was a robbery and the second point is, who committed the robbery. The Court: Don't you think we are getting a little ridiculous, or aren't we?"

The Washington State Constitution, Art. 4, § 16, provides that:

"Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law."

The purpose of this constitutional prohibition was well expressed in *State v. Crotts*, 22 Wash. 245, 250, 60 Pac. 403 (1900), in an opinion written by Judge Dunbar, who participated as a delegate in the state constitutional convention:

"There are different ways by which a judge may comment upon the testimony, within the meaning of the constitution referred to above. The object of the constitutional provision, doubtless, is to prevent the jury from being influenced by knowledge conveyed to it by the court of what the court's opinion is on the testimony submitted. The constitution has made the jury the sole judge of the weight of the testimony and of the credibility of the witnesses, and it is a fact well and universally known by courts and practitioners that the ordinary juror is always anxious to obtain the opinion of the court on matters which are submitted to his discretion, and that such opinion, if known to the juror, has a great influence upon the final determination of the issues. . . ."

■ The conduct of the trial judge, which falls within the category of a prohibited comment, must be coextensive with the purpose of the constitutional provision. Thus, this court has consistently held that if the trial judge conveys to the jury his personal opinion regarding the truth or falsity of any evidence introduced at the trial, he has violated the constitutional mandate. *State v. Reed*, 56 Wn. (2d) 668, 354 P. (2d) 935 (1960); *State v. Myers*, 53 Wn. (2d) 446, 334 P. (2d) 536 (1959); *State v. Clayton*, 32 Wn. (2d) 571, 202 P. (2d) 922 (1949).

In this case, the burden was upon the prosecution to prove beyond a reasonable doubt, *inter alia*, the corpus delicti. There is no doubt that, although not so intended, the remarks of the trial judge could only have had the effect of indicating to the jury that the judge believed that at this point in the trial it could not be denied that a robbery had taken place, and that this essential element of the prosecution's case had been so well established that to suggest otherwise was "getting a little ridiculous."

In the past, judgments of conviction have been reversed because of "comments upon the evidence" which were far less obvious to the jury than this one; *e.g., State v. Vaughn*, 167 Wash. 420, 9 P. (2d) 355 (1932); *State v. Hyde*, 20 Wash. 234, 55 Pac. 49 (1898); *State v. Walters*, 7 Wash. 246, 34 Pac. 938 (1893).

The state, in its brief, argues in support of its three contentions to the effect that the court's comment did not constitute reversible error.

The first contention is that:

"Appellant has cited many cases as authority for his proposition. However, most of these may be distinguished on their face, by the fact that the alleged error was committed either in the court's instructions to the jury, or by the court interrupting counsel and interrogating witnesses. . . ."

■ This distinction is not controlling. In *State v. Surry*, 23 Wash. 655, 63 Pac. 557 (1900), this court put some emphasis on the fact that "the remarks were directed solely to counsel for appellant, and were not intended to influence

the jury or to be considered by them." The fact was empha-
sized because the court felt that remarks addressed directly
to the jury are far more likely to influence the jurors than
remarks addressed primarily to counsel. That position is
tenuous, at best. It is possible that jurors would give as
much weight to an "overheard" remark of the judge as to
a remark addressed to them. The principle is the same in
any case, and respondent does not dispute it.

Second, respondent contends that unless the remarks of
the trial judge, in giving his reasons for a ruling, can be
shown to be "prejudicial" to appellant, it is not reversible
error. If, by "prejudicial," respondent means "indicating
to the jury his opinion of the evidence, in violation of the
constitutional mandate," we would agree.

Respondent cites several cases in support of its conten-
tion. Upon reading them, it is apparent that in none of
them did the statement of the trial court have the effect of
conveying to the jury the judge's personal opinion as to
the truth or falsity of any evidence. See, *e.g., State v.
Adamo*, 128 Wash., 419, 223 Pac. 9 (1924); *State v. Meyers*,
121 Wash. 579, 210 Pac. 4 (1922); and *State v. Storrs*, 112
Wash. 675, 192 Pac. 984, 197 Pac. 17 (1920).

A case which respondent says is "similar" to the case at
bar is *State v. Brown*, 19 Wn. (2d) 195, 142 P. (2d) 257
(1943), in which the defendant was charged with an assault
on a young girl. During the course of that trial, a discus-
sion arose between the trial judge and defense counsel over
an objection to the admission of an exhibit. The judge asked,
" 'Are you disputing the assault?' " and " 'This evidence
here, are you denying it? I mean with the admissions, con-
fessions and all that?' " This court held that the statements
complained of "did not indicate the judge's opinion as to
the truth or falsity of any evidence in the case."

Whether or not the above-quoted remarks were correctly
held not to indicate the trial court's opinion as to the truth
of the evidence, it is certain that the remarks of the trial
court in the instant case constituted a comment upon the
evidence, because they indicated to the jury that the corpus
delicti had been established beyond cavil. Had the trial

court, in *State v. Brown, supra,* gone on to state that it was "ridiculous" to dispute the fact that the assault had taken place, the facts would have been much closer to the case at bar.

In our opinion, the remarks of the trial court clearly violated the constitutional mandate. The situation described previously might reasonably have appeared ridiculous to the court, but to communicate its feeling to the jury is forbidden by the constitution, whether reasonable or not.

Respondent's third contention is that:

"While it may have been error for the trial court to make the remark found in the record, it was not so prejudicial to the appellant's cause [as] to be a comment on the evidence in violation of the State Constitution so as to prevent him from having a fair trial. The argument of appellant that the remark of the trial court swayed the jury's deliberations to the extent that the appellant is entitled to a new trial, is of doubtful validity in light of all the evidence which has been previously adduced through testimony of the various witnesses who were at the project office when the incident occurred. The facts are, that there was overwhelming evidence that a robbery had been perpetrated. The jury could not have concluded otherwise even without the court's remark."

If this is what respondent meant in saying that a remark must be "prejudicial" in order to constitute reversible error, we disagree.

Even if the evidence commented upon is undisputed, or "overwhelming," a comment by the trial court, in violation of the constitutional injunction, is reversible error unless it is apparent that the remark could not have influenced the jury.

" . . . It is not the *quantum* of any particular comment, but all comment whatever, that is inhibited by the constitution; and, therefore, courts should be extremely careful to confine their instructions solely to declaring the law. All remarks and observations as to the facts before the jury are positively prohibited, and if any such are made, the judgment will be reversed unless the appellate court can see that the accused was in no wise prejudiced thereby." *State v. Walters,* 7 Wash. 246, 250, 34 Pac. 938 (1893).

In *State v. Hyde,* 20 Wash. 234, 237, 55 Pac. 49 (1898), in reversing a conviction of assault because of a comment upon the evidence by the trial judge, the court said:

" . . . The vice consists in doing what the constitution forbids to be done, and, in dealing with error of this character, courts will not consider the probable consequences of the error. The way to effectively prevent repetition is to put the seal of condemnation upon the practice, and such is the course uniformly pursued by the courts. . . ."

In *State v. Manderville,* 37 Wash. 365, 370, 79 Pac. 977 (1905), the court again dealt with a comment on the evidence, and there stated:

" . . . Where an error is made which violates a constitutional provision, the judgment in a criminal case will ordinarily be reversed without a showing that said error did prejudice the rights of the defendant, unless the facts and circumstances be such that it affirmatively appears that such defendant was not, and could not have been, injured thereby. . . ."

We there held that it affirmatively appeared that the defendant had not been prejudiced.

The quoted statement in the *Manderville* case is in accord with what we have held in dealing with the violation of other express prohibitions.

In *State v. Rose,* 43 Wn. (2d) 553, 262 P. (2d) 194 (1953), where there had been misconduct by the jury prohibited by statute, the state argued that the defendant had failed to make an affirmative showing that his substantial rights were prejudiced. This court answered that contention by stating, at page 556:

"Standing alone and without any showing of actual prejudice, or met by an affirmative showing that no actual prejudice resulted, some of the incidents of which complaint is made would not warrant a reversal. However, some of the incidents are direct violations of the statute; they are not violations of a discretionary order of the trial court. Judge Chadwick, speaking for the court in *State v. Bennett,* 71 Wash. 673, 677, 129 Pac. 409 (1913), said:

" 'In the absence of a statute, prejudice will not be presumed. This is the holding in the Pepoon case [*State v. Pepoon,* 62 Wash. 635, 114 Pac. 449]; but where the statute

says thou shalt or thou shalt not, a presumption of prejudice follows.'

"There is here a *prima facie* presumption of prejudice. The burden was upon the state to show that no prejudice actually resulted. *State v. Amundsen*, 37 Wn. (2d) 356, 223 P. (2d) 1067 (1950). This the state did not do. It failed to file any affidavit, even explanatory, of *any* of the alleged acts of jury misconduct."

■  Thus, while it is true that there must be prejudicial error to warrant a reversal, respondent fails to appreciate that the error here committed is the failure to follow the mandate of the constitution. The burden is not upon appellant to prove prejudice in this situation because prejudice is presumed. Reversible error has been committed unless it affirmatively appears from the record that appellant could not have been prejudiced by the trial judge's comments.

The scope of what the trial court indicated to the jury as having been proved is more fully appreciated when it is realized that there are several statutory elements of the crime of robbery.

"Robbery is the unlawful taking of personal property from the person of another, or in his presence, against his will, by means of force or violence or fear of injury, immediate or future, to his person or property, or the person or property of a member of his family, or of anyone in his company at the time of the robbery. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial.  . . ." RCW 9.75.010.

The comments of the trial judge were all-encompassing. By the appellant's plea of not guilty, every material allegation of the information and every element of the state's case necessary for a conviction was put in issue. Upon the state rested the burden of proving each of these elements beyond a reasonable doubt to the satisfaction of the jury.

As the defense counsel correctly pointed out to the trial court at the time the comments were made, there was a twofold purpose in having the trial: (1) to determine whether a robbery was committed, and (2) if so, who com-

mitted the robbery. The trial court's comment could have been understood by the jury only as indicating the trial judge's belief that the state had already proven that a robbery, as defined in RCW 9.75.010, had been committed, and that the only remaining question to be decided by the jury was who committed it. Thus, the state was inferentially relieved of the burden of proving the corpus delicti.

Unlike a civil case, the court could not withdraw any issue from the consideration of the jury as conclusively proved. In *State v. De Pasquale*, 39 Wash. 260, 81 Pac. 689 (1905), the court said:

"... While the evidence in this case may show that the appellant is guilty of the crime of manslaughter, yet the appellant has a constitutional right to have the question of his guilt determined by a jury uninfluenced by the opinion of the trial judge."

Directly in point is *Spokane v. Dale*, 112 Wash. 533, 192 Pac. 921 (1920). The defendant was convicted of transporting intoxicating liquor, in violation of a Spokane city ordinance. The case was reversed because the trial court, in its instruction to the jury on the definition of the word "transport," appeared to assume certain facts put in issue by the defendant's plea of not guilty. From reading the decision, it appears that the facts assumed were not otherwise in controversy. Yet, we said that the language of the court relating to those matters of fact violated Art. 4, § 16, of the state constitution.

*State v. Nist*, 66 Wash. 55, 118 Pac. 920 (1911), was a case where certain evidence was erroneously admitted. The court disposed of an argument similar to that presented by respondent in the instant case by saying:

"The state's learned counsel, however, contend that there was an abundance of evidence to sustain the conviction outside of the objectionable evidence, and argue that its admission is, for that reason, not so far prejudicial as to require a reversal. But this court has no means of knowing what effect the erroneous evidence had upon the minds of the jury. It may have been the controlling factor that induced the verdict of guilty. Before the erroneous introduction of evidence can be regarded as nonprejudicial, it

must clearly appear that it is so. It does not so appear in this instance. The appellant 'was deprived of a right which the law accorded him, objected to the deprivation and duly excepted, and the presumption is that he was injured thereby.' *State v. Lee Doon,* 7 Wash. 308, 34 Pac. 1103."

█ We cannot say that it affirmatively appears that the jury could not have been influenced by the comments of the trial judge. We hold that the violation of Art. 4, § 16, of the Washington Constitution constituted reversible error in this case.

█ Appellant also contends that the trial court erred in permitting testimony that appellant, after his arrest, refused to answer police interrogation concerning the alleged robbery, and refused to participate in the "Harger test" for blood alcohol content. This issue was not raised at the trial court level; hence, it is not reviewable on appeal.

Appellant makes three assignments of error relating to the evidence. First, it is argued that the evidence was insufficient to establish ownership of the money taken. We are satisfied, from a review of the record, that the evidence as to that element of the crime charged was sufficient. The last two contentions relate to alleged oversights on the part of the prosecutor which are highly unlikely to occur again, and which, therefore, need not be discussed.

The judgment of the trial court is reversed, and the case remanded for a new trial to be conducted in accordance with the views herein expressed.

FINLEY, WEAVER, ROSELLINI, HUNTER, HAMILTON, and HALE, JJ., concur.

OTT, C. J. (dissenting)—The salient facts which gave rise to this appeal are as follows: A man with a handkerchief over his face entered the office of the housing project and, at the point of a gun, ordered the cashier to "Give me the money." The cashier placed the money in a paper sack, together with a petty cash slip indicating a payment of $1.75 for a cleaning bill. The man left in an automobile. Defendant was later apprehended, and the sack containing the money and the petty cash slip, together with a gun, was found in his automobile.

After the state's witnesses had testified to these facts, and while a police officer was being interrogated, the following occurred:

"Q. Upon arriving at the office of the Project what did you find? A. Well, on our arrival we discovered Detective Panton had already arrived and that the person that had performed the stick-up had left. MR. HALEY: I will object to the conclusion of the officer here. . . . THE COURT: *Are you denying that there was a robbery at the housing project at that time on that date?* MR. HALEY: *I don't know, your Honor. I think that is what we are here to determine.* . . . THE COURT: *Don't you think we are getting a little ridiculous, or aren't we?*" (Italics mine.)

Thereafter, the defendant testified as follows:

" . . . So as I say, I had been drinking and I was on parole from Walla Walla and it certainly would be obvious if I am sitting there with the bag and money in the car and I would be the one that had committed *the robbery*, so the only thing I could do would be to get away from there. So that is just exactly what I did." (Italics mine.)

The defendant admitted that a robbery had, in fact, been committed. The trial judge's statement of this fact was not a comment upon the evidence within the constitutional prohibition.

In *State v. Browder,* 61 Wn. (2d) 300, 302, 378 P. (2d) 295 (1963), we stated:

"Our oft repeated interpretation of Art. 4, § 16, of the state constitution is that the assumption of admitted facts is not a comment on the evidence. [Citing cases.]"

Assuming, arguendo, that the court's statement to counsel, in ruling on the objection, was a comment on the evidence, in my opinion it did not deny the defendant a fair trial for two reasons: (1) The court's statement was neither a negative nor an affirmative assertion of the established fact, and (2) the defendant admitted that there had been a robbery; therefore, the court's comment was simply corroborative of the defendant's admission.

In *Blackburn v. Groce,* 46 Wn. (2d) 529, 536, 283 P. (2d) 115 (1955), we said:

" . . . All comment is prohibited, but it does not follow that every comment constitutes grounds for a mistrial or that a new trial will be granted in consequence thereof. The test is, *Was the party complaining of the comment prejudiced thereby?* [Citing cases.]" (Italics mine.)

The facts in the instant case fall squarely within the rule announced in *Blackburn v. Groce, supra.* The *complaining* party failed to show prejudice.

Finally, the majority hold that any comment upon the evidence by the trial judge establishes a prima facie presumption of prejudice which merits a new trial, unless the state overcomes the presumption. The cases which the majority rely upon in support of this point of view were discussed in *State v. Levy*, 8 Wn. (2d) 630, 113 P. (2d) 306 (1941), and the rule now adopted by the majority was there expressly rejected.

The majority's newly announced rule is in direct conflict with the rule of the *Blackburn* case, *supra*, and the cases cited therein, which requires the *complaining party* to establish prejudice. It is also contrary to the law announced by the Supreme Court of the United States in *Beck v. Washington*, 369 U. S. 541, 558, 8 L. Ed. (2d) 98, 82, S. Ct. 955 (1962) as follows:

" 'While this Court stands ready to correct violations of *constitutional rights*, it also holds that "it is not asking too much that the burden of showing essential unfairness be sustained *by him who claims such injustice and seeks to have the result set aside*, and that it be sustained not as a matter of speculation but as a demonstrable reality." ' *United States ex rel. Darcy v. Handy*, 351 U. S. 454, 462 (1956). . . ." (Italics mine.)

Where, as here, a defendant admits the fact upon which the alleged prejudice to him is predicated, he has not sustained the burden of proving prejudice "as a demonstrable reality."

For the reasons stated, the judgment and sentence should be affirmed.

HILL, J., concurs with OTT, C. J.