[No. 248-2.   Division Two.   June 2, 1971.]

THE STATE OF WASHINGTON, *Respondent*, v. ALFRED "BENNY" GITCHEL, *Appellant*.

*Jack L. Burtch,* for appellant (appointed counsel for appeal).

*L. Edward Brown, Prosecuting Attorney,* and *Curtis M. Janhunen, Deputy,* for respondent.

PEARSON, J.—Defendant appeals from convictions on two counts of first-degree forgery arising out of a check-cashing scheme. He challenges the giving of an instruction relative to aiding and abetting and the failure to grant a mistrial

after an exchange between the trial court and defense counsel in the presence of the jury. The sufficiency of the evidence is not challenged on appeal.

The defendant, Gitchel, and four other persons participated in a rather extensive check-cashing spree. Defendant Gitchel secured a large number of printed payroll checks from an Aberdeen business firm and also made a false driver's license and birth certificate. One codefendant secured a used check protector; another forged the name of one maker of the check. Still another forged the names of the other maker and the payee; the fourth took the false identification and actually passed the forged checks. The evidence indicates that Gitchel went along on the check-cashing expedition, but remained in the car while his codefendant went to cash the checks. The four codefendants all testified against Gitchel and all were given deferred sentences on pleas of guilty of forgery.

Appellant's first assignment of error arises out of an apparent attempt to show that these deferred sentences resulted from an arrangement whereby the other defendants would receive lenient treatment in return for testimony against Mr. Gitchel. The statement of facts shows[1]

_____

[1] The record of the incident in question reads: "Q. Was it your understanding that if you cooperated that you would be given a deferred sentence? A. No. THE COURT: Mr. Burtch, the Court never makes any commitments with any defendants. MR. BURTCH: I understand that, Your Honor. THE COURT: You are implying that the Court promised her something. MR. BURTCH: No I am not, Your Honor. I am sure that the Court—THE COURT: That she would be given a deferred sentence, and there is only one person in the world who can pass a sentence, and that is the judge. I want you to explain to the jury and rephrase that question. MR. BURTCH: I would like to explain. THE COURT: The recommendations may come from the prosecutor, but it is the judge who has to live with his conscience and it is the judge who has to find what the disposition is going to be. MR. BURTCH: Your Honor, I feel that the comments are unfair to my client, and I made no such inference and I don't feel it is fair. THE COURT: The question was that she understood she would be given a deferred sentence and there is only one person that could give her a deferred sentence, isn't there? MR. BURTCH: I also know the practice, being a prosecutor myself, we would say we would recommend the deferred sentence and often in the minds of those people they thought it was a promise for a deferred

that as defendant's counsel was attempting to elicit testimony to support this contention, the trial court stopped him and delivered a rebuke. During this exchange, a motion for mistrial was made and denied. Error is assigned to denial of this motion. The rules relative to mistrials because of trial court rebukes to counsel were set out in *State v. Whalon*, 1 Wn. App. 785, 464 P.2d 730 (1970). In that case, we stated that prejudice is the touchstone of error in this field. There was, we think, no prejudice to the position

sentence. I know that that is the truth, and I meant no inference the Court made any kind of a promise. THE COURT: As long as it is clear to the jury that your remarks referred only to what the prosecutor might recommend. MR. BURTCH: Well, certainly. MR. JANHUNEN: Your Honor, I would like to ask to be heard too. That may have been Mr. Burtch's practice when he was in the office, but it is not our practice now. MR. BURTCH: It was never my practice to do other than to tell them I would recommend it to the Court. Your Honor, I move for a mistrial at this time. I feel that both the comments of the Court and the prosecutor are very unfair. THE COURT: The motion will be denied. The question was improper. For the benefit of the jury, there is only one person that has the right to make the decision on what the disposal of a case will be, and that is the judge. Others may make recommendations. MR. BURTCH: May I proceed? THE COURT: They have a right to make recommendations, ladies and gentlemen of the jury, but defendants are also given to understand that they are not binding. If they are not so advised by the prosecutor, the judge does it in open court before receiving a plea of guilty. You understand that any recommendations anybody makes, the Court may follow but doesn't have to and may elect not to. MR. BURTCH: Would you also explain to them, Your Honor, that the prosecutor does on occasion promise that he will recommend a deferred sentence, and that people do enter pleas in reliance upon this promise? THE COURT: No argument about that. They enter pleas relying on the promise that the prosecutor will make a recommendation, but nobody has the right to—any defendant in such a position is advised, if not by anybody else then by the judge, that is a recommendation only and it is not binding on the Court. MR. BURTCH: I made no such inference any other way, Your Honor. I would like to be able to establish the fact that often people do rely upon the promise of the prosecutor. THE COURT: That he would make the recommendation. MR. BURTCH: Yes. And that is all I meant to imply. I never meant to imply that there was any manner of arrangement. THE COURT: If that is all that was intended, your question was entirely proper. Now that isn't what you said, however. MR. BURTCH: I thought I said that. Q. Isn't it true that you understood that the prosecutor would recommend a deferred sentence when you entered your plea of guilty? A. No sir."

of the defendant or to the effectiveness of his counsel as a result of this exchange. No reflection was cast on the integrity of counsel. In fact, the trial court even stated that on occasion the prosecuting authorities will promise recommendations of leniency in return for assistance in prosecution of other persons. The court also stated that it would be proper to ask about such an arrangement. The exchange began when the trial court apparently thought that defense counsel had asked whether the court and the prosecution had conspired to secure testimony against his client. A rebuke of this sort of question would be well merited. We think that when the whole exchange is read in context, the trial court, though it might perhaps have tempered its remarks had it had more time for reflection, committed no error, since no prejudice to defendant's position resulted from the exchange.

■ This exchange is not a comment on the evidence within the rule of *State v. Bogner*, 62 Wn.2d 247, 382 P.2d 254 (1963). The trial court was not speaking about the truth or falsity of the proof, but was seeking to remedy what it saw as an attack on judicial character. The feelings of the trial court as to the truth value of the testimony of any of the witnesses were not communicated to the jury.

Defendant's other assignment of error relates to the giving by the trial court of instruction 6.[2] It is contended that this instruction is deficient in not setting out the requirement that the aider or abettor share the criminal intent of the perpetrator of the criminal act.

■ We think this assignment of error to be without merit, for two reasons. First, while defendant excepted to the giving of instruction 6, he proposed no instruction in place of it, or to supplement it. This failure waives objection to the instructions, absent manifest injustice. The rules

---

[2]"You are instructed that under the statutes of the State of Washington every person who stands by aiding, assisting or abetting, or who, not being present, directly or indirectly, has aided, assisted, abetted, advised, encouraged or counseled the perpetration of a crime is guilty of the commission of the crime and shall be proceeded against and punished as a principal."

of this court require that where error is predicated on failure to give instructions, the proposed instruction must be set out. CAROA 34. The reason behind this rule is one of allowing the trial court to consider and correct any errors it may be about to commit by improper instruction. When this is not done at trial, the issue is waived on appeal. *State v. Robinson*, 78 Wn.2d 479, 475 P.2d 560 (1970).

Second, in this case, the instruction given is adequate, if not ideal. Instructions 7 and 8 informed the jury that to be guilty of the crime of forgery, the acts constituting the crime must have been proven and these actions must have been done with criminal intent. Since criminal intent is required to convict one as a principal in the crime, it is also necessary for aiding and abetting because the jurors were told that an aider or abettor is treated as a principal. If the jury was properly instructed as to its role under the law and not misled, the semantic difficulties of the instructions will not constitute error. *State v. Redden*, 71 Wn.2d 147, 426 P.2d 854 (1967). When the instructions here are read as a whole, we do not think that the jury was misled as to the intent required by the law for aiding and abetting.

Affirmed.

PETRIE, C.J., and ARMSTRONG, J., concur.