[No. 38408. Department One. June 30, 1966.]

THE STATE OF WASHINGTON, *Respondent*, v. MARTIN L. WILLIAMS *et al.*, *Appellants.**

*Reported in 416 P.2d 350.

Roland C. Wightman, for appellants.

The Attorney General and Angelo R. Petruss, Assistant, for respondent.

HILL, J.—This condemnation was previously before this court in State v. Williams, 64 Wn.2d 842, 394 P.2d 693 (1964). In that case we affirmed an order of the superior court setting aside an award of $45,000 for damages to the property owner and granting a new trial. The property owner appealed. We affirmed the trial court, holding that a new trial was necessary because the trial court had permitted the jury to consider an alleged decrease in the value of the property, resulting from possible changes in the regulations governing parking while loading and unloading, which changes would be a reasonable exercise of the police power and not a compensable item of damage.

The property in question is a 4-story building, completely occupied by a cold storage business owned and operated by the property owners. The only access by truck is from Browne Street on which the building has a frontage of 169.9 feet. The state's plans call for the improvement of Browne Street as part of Primary State Highway No. 3.

There were to be three changes in the portion of Browne Street adjacent to the building in question, all within the existing street: first, the existing driveway was to be widened; second, a buffer curb was to be installed where new curbing was to be put in; and third, the existing grade of Browne Street was to be changed in the following manner: Along the southerly half of the property frontage, the existing grade of Browne Street was to be raised slightly. Along the northerly half of the frontage, the existing grade of Browne Street was to be lowered from approximately 2½ inches at the middle of the building to 2 feet at the northerly end of the property. The result would be a 7 per cent grade in the street along the north half of the building.

Appraisers for the state and the property owners were agreed that any damage caused by the widening of the street or the construction of the buffer curb would not be considered as constituting compensable damage to the property. It was agreed that compensable damage would result from the change in grade, which would make access less convenient. The state's appraiser testified that this would reduce the value of the property $950. The property owners' appraiser testified that it would be reduced in value $22,500; and one of the property owners testified that the damage would be $45,000.

The jury's verdict, as heretofore indicated, was $1,250. A motion for a new trial was denied, and from the judgment entered on the verdict, the property owners appeal, urging six assignments of error all dealing with claimed trial errors.

The property owners urge that the giving of instruction No. 13 was error. That instruction was:

> You have been permitted under direction of the Court to view the property of respondents. This opportunity was afforded you in order that you might become acquainted with the physical situation, to observe the kind and character of the property in question and to observe the effect upon said property which will be brought about by the proposed construction. The knowledge which you thereby obtained may properly be used by you in weighing the evidence.

The Committee on Uniform Jury Instructions is recommending a very brief instruction on "view" in condemnation cases, i.e.,

> You have been permitted under direction of the court to view the property involved in this action. This opportunity was afforded only that you might better understand the evidence. (WPI 150.12)[1]

It is likewise the committee's recommendation that where an explanatory or cautionary instruction is given before the jury views the property, it should be told:

> What you will see at the scene is not evidence. The evidence as to the appearance and condition of the

---

[1]Washington Pattern Instructions. Not yet published.

property must come to you from the witness stand or the exhibits admitted in the trial. The sole purpose of this view is to help you understand the evidence as it is presented to you.

Two of our later condemnation cases (*In re Seattle*, 49 Wn.2d 247, 299 P.2d 843 (1956), and *In re Schmitz*, 44 Wn. 2d 429, 268 P.2d 436 (1954)) stressed that the sole purpose of a "view" is to give help in understanding the evidence.

There was a timely objection to the instruction given and a request for an instruction so limiting the purpose of the view.

█ While the instruction complained of is no model of the brevity or clarity for which the courts have been striving in recent years, we do not believe that it can be regarded as prejudicially erroneous; indeed, it was given in the first trial of this condemnation proceeding without objection from either side; and various phrases find support in our earlier cases with their more prolix instructions.[2] We are satisfied that the jurors must have understood that the knowledge they obtained by "the view" was only to be used in "weighing the evidence." This phrase may readily be equated with "understanding the evidence," which is the major theme of the later instructions.

█ We agree with the property owners that instruction No. 8 as to "just compensation" is incomplete because it gives the jury no accurate guide as to the time when the amount of compensation is to be fixed. It is clear that in this state the compensation is to be measured as of the date of the trial. *Distler v. Grays Harbor & Puget Sound Ry.*, 76 Wash. 391, 136 Pac. 364 (1913); *Grays Harbor & Puget Sound Ry. v. Kauppinen*, 53 Wash. 238, 101 Pac. 835 (1909). See also *Blankenship v. State*, 160 Wash. 514, 295 Pac. 480 (1931).

The testimony as to damages was by the form of the questions in terms of the difference in value at the time of trial; hence, it is difficult to believe that the property

---

[2]See *Newell v. Loeb*, 77 Wash. 182, 196, 137 Pac. 811 (1913); *Seattle & Montana R.R. v. Roeder*, 30 Wash. 244, 259, 70 Pac. 498 (1902).

owners were prejudiced by the failure to properly instruct the jury.

Error was also assigned to a failure to give a proposed instruction on this phase of the case, *i.e.*, as of what date is the compensation to be fixed. What we have just said is sufficient comment on that assignment of error.

The property owners complain of the use of the words "appreciable and substantial" in the following instruction:

> In arriving at the amount of compensation to be paid the respondents you shall not take into consideration anything as an element of damages which is remote, or imaginary, or uncertain, or speculative, even though mentioned or testified to by witnesses; but the only elements which you shall take into consideration are those which are appreciable and substantial and which will actually affect the market value of the property and which are established by the evidence to a reasonable certainty. (Instruction 10.)

We would again agree that the instruction, though perhaps not prejudicial, is not to be commended, being both redundant and slanted. The Uniform Jury Instruction Committee will be recommending the following instruction to cover the factors to be considered on arriving at the compensation to be paid the property owners:

> In arriving at the amount of compensation to be paid the respondents, you should not consider anything which is remote, imaginary, or speculative, even though mentioned or testified to by witnesses. The only elements which you should take into consideration are those which will actually affect the fair market value of the property and which are established by the evidence. (WPI 150.11)

We regard the later more concise statement, omitting the words "appreciable and substantial," as preferable.

We made it clear in *Martin v. Port of Seattle*, 64 Wn.2d 309, 391 P.2d 540 (1964), that the term "substantial" used in this manner "is of dubious relevancy or utility." A further statement of our views may be found in the penultimate paragraph of that opinion.

The jury has been told not to consider anything that is remote, imaginary, uncertain, or speculative. We see no

reason why it should not consider any elements not falling into those categories "which affect the fair market value of the property and which are established by evidence."

Error is assigned to the trial court's refusal to permit the introduction of any evidence as to the property owners' right to use the sidewalk in front of their premises.

The property owners say that it was not possible to present this evidence in view of the position taken by the trial court.

Our attention is directed to no instance of a refusal to admit any evidence of the property owners' right to use the sidewalk in front of their premises; and there is no record of any offer of proof on this point being rejected.

No record is made that would enable us to consider the materiality or relevance of the particular evidence the property owners might have desired to offer.

The final assignment of error is irregularity in the proceedings. It is urged that the trial judge cross-examined the real estate appraiser for the property owners and argued with him in and out of the hearing of the jury; and that the trial judge made comments on objections that amounted to comments on the evidence.

The cross-examination of the real estate appraiser for the property owners by the trial judge was outside the presence of the jury, and could not possibly have affected the verdict.

As indicated, this was a retrial following an appeal in which it had been held that certain noncompensable items of damage had been considered in arriving at the previous verdict of $45,000. The property owners' real estate appraiser was now testifying in terms of $22,500. The state requested permission outside the presence of the jury to determine whether his valuation included items of damage heretofore held to be noncompensable. The property owners concurred in this procedure. During this examination, the trial court asked questions trying from the somewhat non-responsive and evasive answers by the witness to determine exactly what elements he had considered. This was necessary inasmuch as the state had moved to strike his testimony

as being based in part at least on noncompensable items.

We see no error in the examination of and discussions with this witness by the trial court outside the presence of the jury. The property owners claim argument by the trial court with this witness in the presence of the jury, but make no designation of where in the record it occurred; hence, we do not consider that claim of error. It is not our responsibility to search the record for error. *Glazer v. Adams*, 64 Wn.2d 144, 391 P.2d 195 (1964); *Enyeart v. Borgeson*, 60 Wn.2d 494, 374 P.2d 543 (1962); *Bruce v. Bruce*, 48 Wn.2d 229, 292 P.2d 1060 (1956). Moreover, the property owners had the benefit of all of the testimony of this witness, as the court saw no place to accurately draw the line between the admissible and the inadmissible, and did not strike any part of his testimony.

The property owners rather cavalierly handle their claim of comment on the evidence.

In their assignments of error, they say:

[P]rejudicial error was committed when the judge made comments after ruling on objections that amounted to a comment on the evidence. (As specifically quoted on page 7, 9 and 10 Supra).

In their argument on this assignment of error, they never refer to the "specific quotations on pages 7, 9 and 10, supra."

We are never advised wherein the property owners considered these quotations to constitute comments on the evidence or wherein they were prejudiced. They seem to us run-of-the-mill colloquies between court and counsel, which occur in every trial, and we see no comment on the evidence therein.

In their very brief argument on the issue of comment, they quote only one claimed instance. Counsel for the property owners was examining one of his clients, and the following occurred:

Q. What I was trying to have you tie down here, if you can, is considering the changes of grade as proposed by the State and according to the testimony of Mr. Hayes and Mr. Barrett and also Mr. Ashley, what effect will that have on your property from the fair market value standpoint? A. Just like the two appraisals did when you feel

that there will be a reduction in income and you will find that there will be a reduction in the market value of the property. Now, if, in November, 1952, when I had gone to buy the Hazelwood it was then located on Division Street—

Mr. Montecucco: (Interposing) I will object, your Honor.

The Court: The objection is sustained. In the first place, the answer is not responsive and, in the second place, I believe we are getting into the areas that under the law we can't get into. We are sailing right into them.

Mr. Wightman: Excuse me, would you repeat the question, please, Mr. Reporter?

(Last question read.)

The Court: Now, that can be answered yes or no. A. Yes.

Mr. Wightman: (Question) Would you tell us if you calculated the figure, what reduction there would be? A. $45,000.00. Q. That would be the difference in the before and after value? A. That is right.

The first statement by the trial court is claimed to constitute a comment on the evidence.

The answer objected to was clearly unresponsive, and the witness was evidently getting into an area beyond those which the parties had stipulated were before the court.

■ Just wherein this was a comment is not discussed. Nor is there any suggestion as to how the property owners were prejudiced thereby.

The property owners concede that no objection was made at the time; but say that it was brought to the court's attention on the motion for a new trial. There is nothing in the record before us establishing that to be the case, and, assuming is to be true, there is no error assigned to the order denying a new trial. The court's statement in *Seattle v. Harclaon*, 56 Wn.2d 596, 597, 354 P.2d 928 (1960), is appropriate:

The record before us does not show that the appellant called the alleged comments upon the evidence to the attention of the trial court, and no error has been assigned to the order denying the motion for new trial.

We see no merit in this assignment of error.

We have agreed with the property owners that certain instructions are not to be commended, but this does not imply that they were prejudicially erroneous, or even that they were erroneous. There are different ways of saying the same thing. Trial court judges sometimes seem to have difficulty in keeping their instructions short and clear; appellate court judges seem to have the same difficulties with their opinions. In fact, this opinion might well have been limited to the statement: We have carefully[3] considered all of the assignments of error and find no prejudicial error; judgment affirmed.

ROSELLINI, C. J., and HALE, J., concur.

OTT, J., and BARNETT, J. Pro Tem., concur in the result.

\*Reported in 416 P.2d 99.

---

[3]To us this word is "redundant"; to the unsuccessful appellant it would perhaps appear "slanted."