[No. 332-1. Division One—Panel 1. March 8, 1971.]

THE STATE OF WASHINGTON, *Respondent*, v. JULES HENRY
RICHARD, JR., *Appellant*.

*Lundin, Estep, Sindell, Haley & Chambers* and *Donald D. Haley,* for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *Terrence A. Carroll, Deputy,* for respondent.

HOROWITZ, C.J.—Defendant was convicted after jury trial of committing a second-degree assault and two robberies on February 20, 1969. The jury by special verdict also found that at the time of the commission of the crimes charged defendant was armed with a deadly weapon. By its verdict of guilty the jury impliedly rejected defendant's plea that he was temporarily insane or mentally irresponsible at the time the crimes were committed. The court denied defendant's motion for new trial and imposed sentence. Defendant appeals.

The sufficiency of the evidence to support the crimes of which defendant was convicted is not questioned.

Most of the testimony below bore upon defendant's plea of temporary insanity or mental irresponsibility under RCW 10.76. Defendant sought to prove that he became temporarily insane or mentally irresponsible on February 20, 1969, either or both because of various events in his past history and by reason of various incidents occurring on February 19 and 20. Because the assignments of error are principally concerned with defendant's plea, a proper understanding of the assignments requires a summary of the evidence introduced upon that plea.

Defendant, the eldest of six children, was raised in part by his long-divorced mother in an unhappy and poverty stricken home. When he was two, he swallowed a bottle of aspirin and acted strangely thereafter for several days. He received no medical treatment at the time, although he appeared to have recovered. Defendant's father on infrequent visits took defendant to gambling houses, pool halls, and places frequented by prostitutes. At 12 defendant was referred to the juvenile court because he could not get along at home. In his next 6 years, he lived in various correctional institutions such as Cascadia, Green Hill, and Stubblefield Home in Walla Walla. In his early years he suffered from enuresis and was nervous at school. When he was about 13, he was treated in the Community Psychiatric Clinic. In the next 3 years he had a series of dizzy spells and periods in which he lost consciousness. These occurred several times a week for a while, but eventually eased off. The last such incident occurred when defendant was in the army where he had problems of adjustment until discharged. In 1967 he was knocked unconscious when struck on the head by a container containing a quart of oil. He received hospital treatment for this injury. In the same year he was involved in an automobile accident and sustained undetermined injuries.

On February 19, 1969, defendant slept most of the day. That evening he commenced drinking beer about 6 p.m., and then 2 hours later began consuming wine, bourbon and other alcoholic beverages. By midnight defendant was

"high" and not acting normally. That evening he also attended a party where intoxicating liquors were served and LSD, a dangerous drug, was present. That evening, or some time the next day before the crimes charged were committed, he smoked a marijuana cigarette. Defendant knew that LSD came in powdered form and could be dissolved and quickly disappear in liquid. He testified in substance that he did not voluntarily and knowingly consume LSD. Dr. C. Richard Johnson, a Seattle psychiatrist who examined him later, concluded that defendant's behavior during the commission on February 20 of the crimes charged could best be explained by defendant, without his knowledge, having received LSD in one or more of the drinks he had consumed at the party he had attended. Defendant finally left the party at 1 a.m. on February 20. He then went into several cocktail taverns, but did not remember leaving them. According to the defendant's testimony, he had a total blackout lasting from approximately 3 a.m. to 8:30 p.m. on February 20. Accordingly, he was unable to testify to the occurrences during that period. His next recollection was waking up in a padded cell in the city jail.

Between 6:15 a.m. and the time of his arrest on the morning of February 20, defendant committed the three crimes for which he was convicted. The assault charge was one in which he held up Mr. Dennis Earl Lange, a Seattle cab driver. After asking Lange for money, defendant fired a shot at him which missed, and instead struck the dashboard. Defendant then broke the cab window and ran off without taking any money. The robberies were committed about 6:30 a.m. that morning, in which he robbed a small sum of money from James H. Damery, Sr., and then Lauren A. Ball. Mr. Damery was an employee of Madrona Foodliner in the 34th and E. Union Street area of Seattle, and Mr. Ball was a bread truck driver for Van de Kamp Bakeries.

While the robberies were committed there was a strong odor of alcohol on defendant's breath. Defendant's speech was excitable and he seemed to be acting and talking

somewhat, but not entirely, irrationally. In the course of the commission of the robberies, defendant's gun went off between the heads of the two victims. Shortly after defendant left the scene of the robberies, he fired two or three additional shots. Seattle police officers then arrived on the scene, and, after seeing the defendant standing in a doorway near the area of the robberies, they attempted to arrest him. The defendant at that time had a gun in his hand. The police officers, including Officer Aardahl who initially sought to arrest defendant, drew their revolvers. Defendant threw down his gun. He then stood approximately eight steps above the officers. He refused the officers' demand that he come down, stating that the officer would have to shoot him before he would do so. Four officers then went up the steps, grabbed the defendant and pulled him down. Two officers handcuffed him and placed him in the back seat of Sgt. William R. Rutherford's car. Defendant was then advised of his constitutional rights and placed under arrest. Defendant yelled and screamed during the entire trip to the police station. He was enunciating words but it was impossible to hold a conversation with him that made any sense. He had to be physically restrained while in the car.

Dr. Antone F. Salel, the city jail physician, saw the defendant at approximately 7:15 a.m. on February 20. The defendant was angry, his pupils were dilated, and the doctor's examination disclosed there were fresh needle marks on his arm. Because of defendant's emotional state, the doctor could not examine him further. Officer Robert Garnet saw defendant later that day in the Seattle City Jail. He observed defendant was lethargic and placed him in a padded cell. February 21, at approximately 9 a.m., defendant was interviewed by Detective William Karban at the city jail. He asked defendant what had happened. Defendant was unable to explain. Detective Karban then explained what had occurred. Defendant was very remorseful and seemed pleasant and courteous.

The court instructed the jury in substance that voluntary intoxication by alcohol or drugs was not a defense to the crimes charged, but that intoxication could be considered on the issue of whether the defendant had committed the crimes with the requisite criminal intent. RCW 10.76.010; RCW 9.01.114; see *State v. Tyler*, 77 Wn.2d 726, 466 P.2d 120 (1970); *State v. Huey*, 14 Wn.2d 387, 128 P.2d 314 (1942); *State v. Beaman*, 143 Wash. 281, 255 P. 91 (1927). By its verdict of guilty the jury necessarily found the crimes were committed intentionally and that the plea of insanity or mental irresponsibility was no defense, either because proof thereof was insufficient, or because insanity and mental irresponsibility were the result of voluntary intoxication by alcohol drinks, drugs, or both.

Defendant makes 10 assignments of error. Upon consideration of the record and briefs before us, we hold that none of the claimed errors prevented the defendant from having a fair trial, and so affirm.

Defendant principally contends that he was deprived of a fair trial because the court conveyed to the jury "by words, actions and rulings" that the defendant had "no defense of insanity on the grounds of involuntary intoxication on LSD." The incidents relied on are the subject of separate assignments of error but are argued together. Several incidents involve alleged improper comments by the trial court, made in the presence of the jury, with respect to which the defendant neither objected nor requested a curative instruction. As later pointed out, we do not find the incidents constitute even a colorable violation of Const. art. 4, § 16, prohibiting court comments to the jury on matters of fact; nor do we find the existence of prejudice in the incidents of the instant case (*Heitfeld v. Benevolent & Protective Order of Keglers*, 36 Wn.2d 685, 220 P.2d 655, 18 A.L.R.2d 983 (1950); *State v. Williams*, 68 Wn.2d 946, 416 P.2d 350 (1966)), although it is recognized that if the trial record shows the existence of unlawful comment, prejudice is presumed. *State v. Lampshire*, 74 Wn.2d 888, 447 P.2d 727 (1968).

During voir dire examination of a juror, the prosecutor objected to a question by defendant's counsel on the ground that the question incorrectly stated the law concerning the legal effect of insanity upon criminal responsibility. The court thereupon cautioned the jury that he would instruct it on the law as to "a matter of intent and as to intoxication or the use of drugs and responsibility and as to a defense under the proper circumstances." Later he did so instruct the jury. Defendant contends that this was the first of several incidents on the part of the trial judge which suggested to the jury that the defense of insanity rested solely on voluntary intoxication. We fail to see, however, how this incident provides a reasonable basis for a claim of prejudice, much less prejudice so great as to require a new trial. See *Heitfeld v. Benevolent & Protective Order of Keglers, supra; Slattery v. Seattle,* 169 Wash. 144, 13 P.2d 464 (1932); *Lasityr v. Olympia,* 61 Wash. 651, 112 P. 752 (1911). Moreover, no unlawful comment being involved, defendant failed to object or request a curative instruction so as to preserve the alleged error on appeal. See *Kilde v. Sorwak,* 1 Wn. App. 742, 463 P.2d 265 (1970); *Spratt v. Davidson,* 1 Wn. App. 523, 463 P.2d 179 (1969); *State v. Gefeller,* 76 Wn.2d 449, 458 P.2d 17 (1969); *State v. Alden,* 73 Wn.2d 360, 438 P.2d 620 (1968); *McUne v. Fuqua,* 42 Wn.2d 65, 253 P.2d 632 (1953).

A later incident occurred when the prosecutor objected to a hypothetical question defendant asked Dr. Richard B. Jarvis, a Seattle psychiatrist. The court sustained the objection "at this moment" explaining "you have not put into evidence yet any acts that he did do." This statement apparently had reference to acts relied on to support a claim of temporary insanity or mental irresponsibility. Defendant without further objection or request for corrective instruction then asked a long hypothetical question. In the court's final instructions to the jury it was instructed to disregard anything "the court has said . . . that would appear to be commenting upon the facts or upon the credibility of any witness . . ." Prior thereto he had also given a

similar instruction in the course of ruling on an objection. The statement of the reason for the ruling does not in this instance constitute an improper comment.

In another incident Mr. Lange, the assault victim, testified that he did not smell alcohol on defendant's breath at the time of the assault. There was certain evidence of drinking given by other witnesses. When asked by defendant whether Mr. Lange's statement given to the police included the term "paranoid", he commenced his answer "You want to get him off on an insanity plea . . ." At defendant's request the court struck the statement. We can find no prejudicial error in the matters described.

A more serious matter is what in effect is the defendant's claim, although not so expressly stated, that Dr. Jarvis, a Seattle psychiatrist and defendant's expert witness, was intimidated by the trial court before answering a hypothetical question put to him. The incident relied upon occurred in the course of a colloquy between court and counsel which occurred outside the presence of the jury while Dr. Jarvis was on the stand prior to giving his answer to the question propounded. The hypothetical question included a recital of defendant's past history and the incidents of February 19 and 20. In the course of the colloquy, the prosecutor moved to eliminate from Dr. Jarvis' testimony and opinion all references to intoxication on the evening of February 19 and the early morning of February 20, whether by liquor and/or drugs. Defendant resisted the motion, contending that the opinion evidence sought to be eliminated was material since it supported the contention that defendant, at the time the crimes were committed, was temporarily insane or mentally irresponsible as a result of involuntary intoxication caused by LSD being placed in his drink without his knowledge. In the course of the colloquy the court indicated his agreement with the prosecutor's position. The court also expressed his skepticism about the correctness of Dr. Jarvis' opinion testimony on defendant's claimed temporary insanity or mental irresponsibility, if the intoxication which occurred on February 19 and 20,

were excluded from consideration. Appellant's brief sets out certain italicized passages in the court's comments to which appellant particularly objects.

Notwithstanding the colloquy, Dr. Jarvis adhered to his opinion that defendant, by reason of his past history and without regard to "the use of drugs or intoxicating liquor" on February 19 and 20, in all reasonable probability was "so far out of his head that he did not know what he was doing."

Following the colloquy, the court called the jury back, and after instructing the jury that he had no power to comment and did not intend to comment on the incidents, ruled that there was to be excluded from the hypothetical "the question of the drugs and intoxication." Dr. Jarvis then testified both on direct and cross-examination "that this young man was out of his head, unable to discriminate between right and wrong, unable to perceive precisely what he was doing."

Defendant contends that the colloquy held out of the presence of the jury and the ruling made by the court upon the jury's return had an immediate and adverse effect on Dr. Jarvis' demeanor, and had the further effect of conveying to the jury the court's skepticism concerning the defense of insanity or mental irresponsibility, in violation of Const. art. 4, § 16. Defendant's brief criticizes "The manner and tone of the trial judge in giving his oral explanation to the jury . . . The record . . . is unable to reflect the impact . . . had upon the demeanor of the witness on the stand. . . . this impact was obvious and was picked up by the jury." Aside from a contention made by defendant's counsel on appeal, the effect of the colloquy before the jury was called back and the later ruling by the court after the jury returned, is not otherwise shown by the record.

A court may violate Const. art. 4, § 16 by a remark which "implicitly convey[s] to the jury his personal opinion concerning the worth of the defendant's testimony." *State v. Lampshire, supra,* 74 Wn.2d at 892. This does not

necessarily mean that a court in the presence of the jury may not make a ruling upon objections to evidence or state his reasons for his rulings, and when necessary the facts upon which he bases them. *State v. Elder*, 130 Wash. 612, 228 P. 1016 (1924); *State v. Estill*, 50 Wn.2d 245, 310 P.2d 885 (1957). A comment in violation of Const. art. 4, § 16 is presumed to be prejudicial and prima facie operates to deprive the defendant of a fair trial. *State v. Lampshire, supra; State v. Bogner*, 62 Wn.2d 247, 382 P.2d 254 (1963); *State v. Jackson*, 83 Wash. 514, 145 P. 470 (1915); *Spencer v. Arlington*, 49 Wash. 121, 94 P. 904 (1908); *State v. De Pasquale*, 39 Wash. 260, 81 P. 689 (1905). *See* Annot., 84 A.L.R. 1172 (1933); Annot., 156 A.L.R. 530 (1945). But even an unlawful comment is not necessarily reversible error unless the comment is prejudicial. *State v. Williams*, 68 Wn.2d 946, 416 P.2d 350 (1966). Comments which would be unlawful if made by the court in the jury's presence do not necessarily constitute reversible error if made outside the presence of the jury. *State v. Studebaker*, 67 Wn.2d 980, 410 P.2d 913 (1966); *see State v. Estill, supra*. If, however, the court's comments expressing an opinion on the credibility of a witness or the facts of the case, although initially made outside the presence of the jury, are repeated to the jury by the witness or counsel, or otherwise shown to have been perceived by the jury, such comments whether or not violative of Const. art. 4, § 16, constitute misconduct prima facie prejudicial. *Cf. Spencer v. Arlington, supra*. If the trial record shows that the court by nonverbal conduct, such as his manner and tone in ruling or instructing the jury, conveys the trial court's personal opinion concerning the credibility of the witness or facts of the case, such conduct may properly be said to violate Const. art. 4, § 16. Furthermore, if the trial record shows that the totality of the court's conduct of the trial with respect to a witness has the effect of intimidating a witness, such an effect may constitute a denial to the defendant of the fair and impartial tribunal requisite to due process of law. *See State ex rel. McFerran v. Justice Court*, 32 Wn.2d 544, 202 P.2d

927 (1949); 16 Am. Jur. 2d *Constitutional Law* § 582 (1964).

Applying the foregoing principles to the instant case, we cannot find from the trial record that the jury perceived any unlawful comment or that Dr. Jarvis was intimidated by the colloquy that occurred outside the jury's presence. Because the trial record does not show the existence of an unlawful comment made in the presence of the jury, or that a comment otherwise unlawful was made outside the presence of the jury but nevertheless perceived by it, we do not reach the question of whether an objection or request for curative instruction is prerequisite to review the error claimed.[1] Similar considerations may properly be said

---

[1] At least four distinct views have been heretofore expressed by the State Supreme Court concerning whether objection and request for curative instruction are necessary to preserve for review an alleged unlawful comment on evidence. First, that objection is unnecessary because the violation of a constitutional right is involved, especially if manifest prejudice would be aggravated by such objection. *State v. Crotts*, 22 Wash. 245, 60 P. 403 (1900); *State v. Jackson*, 83 Wash. 514, 145 P. 470 (1915); *Eckhart v. Peterson*, 94 Wash. 379, 162 P. 551 (1917); and *State v. Warwick*, 105 Wash. 634, 178 P. 977 (1919). Second, a related approach is taken in the recent case of *State v. Lampshire*, 74 Wn.2d 888, 447 P.2d 727 (1968), where it was held that neither objection nor request for curative instruction was necessary because an unlawful comment on the evidence violates the defendant's constitutional rights. Third, that an objection is unnecessary because it might cause further prejudice, but to be reviewable, objection must be brought to the attention of the trial court either in a motion for new trial or by objection at the time of comment. *State v. Davis*, 41 Wn.2d 535, 250 P.2d 548 (1952). *See also Lee & Eastes, Inc. v. Continental Carriers, Ltd.*, 44 Wn.2d 28, 265 P.2d 257 (1953); *Olson v. Seattle*, 54 Wn.2d 387, 341 P.2d 153 (1959). Fourth, objection or request for cautionary instruction is necessary to preserve for appellate review the matter of unlawful comment. *See e.g., State v. Bengson*, 165 Wash. 612, 5 P.2d 1040 (1931); *State v. Kelsey*, 46 Wn.2d 617, 283 P.2d 982 (1955). We need not decide to what extent *Lampshire* overruled prior inconsistent cases *sub silentio*. It is arguable that *Lampshire* did not involve and does not apply to the post prejudicial effect of a comment made out of the presence of the jury, or to the prejudicial effect of the manner and tone of the trial court's ruling made in the presence of the jury. These errors are peculiarly susceptible to being obviated by objection and request for curative instruction; not to impose such a requirement would tend to promote expensive and avoidable retrials. In *Lampshire*, unlike the instant case, prejudice appeared from the record and according to the court was not capable of correction by curative instruction.

to apply to the possible claim of violation of due process based on witness intimidation. The existence of such intimidation must affirmatively appear from the record made below. We cannot necessarily determine from a mere cold record the manner and tone of the trial judge's rulings. Neither can we say as a matter of law that every comment made by a court to a witness outside the presence of a jury in the course of colloquy between court and counsel has post colloquy prejudicial effects. Whether prejudice exists in the illustrations given must be determined on an *ad hoc* basis. In doing so, we take judicial notice of the fact that the susceptibility of witnesses to comments by the court is not uniformly determinable or predictable. Witnesses vary in age, health, knowledge, experience, fortitude and ability to withstand the onslaughts of hostile criticism and expression of skepticism. Furthermore, trial judges vary in demeanor, manner, inflection, tone of voice, gestures and emphasis. In the instant case Dr. Jarvis was shown to be an experienced expert witness who in the first half of 1969 had already testified in 67 criminal cases and expected to testify in 140 cases for the year. He was undoubtedly long accustomed to the rigors of a determined and hostile cross-examination. The record shows that during the course of the colloquy, the witness stood his ground, and, after the jury was called back, appeared to testify no differently than he had indicated he was prepared to testify during the course of the colloquy.

It seems to us that in balancing the state's need to convict the guilty and the defendant's need to be fairly tried, orderly appellate practice requires that the determination of whether the jury perceived the existence of an unlawful comment made outside the presence of the jury, or whether a witness was intimidated by such a comment when he testified before the jury, is a matter that must be established below rather than asserted for the first time on appeal by counsel for the party claiming to be adversely

affected.[2] We do not depart from, nor do we rely upon, the rule that errors involving violation of constitutional right may be asserted here for the first time. We merely hold that a violation of constitutional right must be shown by the trial record, and that a claim of such violation or prejudice is insufficient if it rests solely upon the contention of counsel made for the first time on appeal. We so hold not because we question the good faith of such counsel—we do not—but rather to protect the integrity of the appellate process in the orderly administration of justice which *inter alia* leaves to the court below the initial and basic responsibility for determining factual matters in passing on legal objections. *See Landers v. Smith*, 379 S.W.2d 884 (Mo. App. 1964); *Yellow Cab Co. v. Greyhound Corp.*, 44 Tenn. App. 567, 316 S.W.2d 15 (1957).

In our opinion, the trial record is insufficient to show a violation of Const. art. 4, § 16; and we are satisfied that on the whole record, the trial court made a conscientious and good faith effort to protect the rights of the respective parties in all matters of which the jury had knowledge. *See Jackson Yellow Cab Co. v. Alexander*, 246 Miss. 268, 148 So. 2d 674 (1963).

■ ■ In yet another incident, Dr. Johnson testified during cross-examination that in arriving at his conclusions he had considered a consultant's report. The prosecutor then asked if the report so relied on showed that there was "no neurological abnormality reflected in the electroencephalogram test." The doctor answered in the affirmative. Defendant then objected to the answer without stating any grounds and the court overruled the objection. We find no error. The objection comes too late if made after the answer is given, unless there was no opportunity to object or it was not apparent from the question that the

---

[2]We leave open the question of whether the existence of error and the prejudice resulting therefrom must be shown by affidavit, testimony of witnesses, or otherwise. *See* 4 Am. Jur. 2d *Appeal and Error* § 540, § 544 (1962); *Mayberry v. Pennsylvania*, 400 U.S. 455, 27 L. Ed. 2d 532, 91 S. Ct. 499 (1971).

answer would be inadmissible, neither of which was the case here. Even if, however, an objection to a question already answered is timely, it will not be considered unless accompanied by a motion to strike. *State v. Jones*, 70 Wn.2d 591, 424 P.2d 665 (1967); *State v. Claughton*, 153 Wash. 473, 279 P. 734 (1929). Furthermore, an objection without statement of grounds, *i.e.*, a general objection, is not reviewable by us. *State v. Severns*, 19 Wn.2d 18, 141 P.2d 142 (1943).

 Defendant complains of certain instructions given or refused. Neither the instructions given nor those refused have been set out in appellant's brief as required by CAROA 42(g)(1)(iii). We are accordingly precluded from considering the assignments of error involving them. CAROA 43; *State v. Gregory*, 73 Wn.2d 537, 439 P.2d 400 (1968).

 Defendant contends that the court erred in allowing the jury to consider whether defendant was armed with a deadly weapon—a matter affecting his term of imprisonment. RCW 9.95.015; RCW 9.95.040. He contends that the statutes do not apply until the defendant has armed himself with a deadly weapon through purchase or theft to commit the crime charged. We do not agree. Under the statute, possession of the weapon at the time the crime is committed is alone sufficient. The statute says nothing about how the weapon must be obtained—whether because found, obtained by gift, purchase, theft or otherwise. If the real thrust of defendant's contention is that the possession of a weapon obtained by one who is temporarily insane or mentally irresponsible is not the kind of possession contemplated by the statute, then the contention is unavailing because the jury has impliedly found against the defendant on the issue of insanity or mental irresponsibility.

 Defendant finally contends that even if none of the errors individually are of reversible magnitude, we must reverse because taken together they have the effect of depriving the defendant of a fair trial. Defendant particularly

relies upon *State v. Swenson*, 62 Wn.2d 259, 382 P.2d 614 (1963). *Swenson* is distinguishable. We are satisfied on this record that defendant was afforded a fair opportunity to present his defense of temporary insanity or mental irresponsibility due to involuntary intoxication and lack of criminal intent. The court permitted him to offer all the evidence he wished on his asserted defenses, and also granted defendant's counsel wide latitude in arguing the question of involuntary intoxication in order to avoid the legal effect of voluntary intoxication. *See Impero v. Whatcom County*, 71 Wn.2d 438, 430 P.2d 173 (1967). It is true the court did not give a separate instruction defining involuntary intoxication. However, defendant must be deemed not to have requested such an instruction because the instruction he requested was coupled with objectionable language. *See Impero v. Whatcom County, supra; State v. Missmer*, 72 Wn.2d 1022, 435 P.2d 638 (1967). Whether the portion of the instruction on involuntary intoxication was correct we are in no position to determine because the instruction is not set forth in appellant's brief as required by CAROA 42 (g) (1) (iii) and CAROA 43; *State v. Gregory, supra.*

The judgment is affirmed.

UTTER and WILLIAMS, JJ., concur.